279 P.2d 458

**L. K. GATES, E. L. Hanson, R. O. Porter and C. C. Randall, Plaintiffs and Appellants,**

**v.**

**C. J. DAINES and M. C. Daines, Defendants and Respondents.**

No. 8243.

Supreme Court of Utah.

Jan. 25, 1955.

Geo. D. Preston, Logan, for appellants.

Bullen & Olsen, Logan, for respondents.

WORTHEN, Justice.

An appeal from a judgment dismissing plaintiff's complaint with prejudice. The case involves the construction of a home-made agreement between a group of doctors.

In January, 1952, the plaintiffs and defendants, all medical doctors, formed a partnership termed "Cache Valley Medical Group," and leased the lower portion of what had been the Cache Valley Hospital. Each member of the group occupied separate office space and all of them used conjointly other space consisting of the Waiting Room, Hallways, X-ray Room, Elevator, Laboratory and a Lavatory, and each doctor paid $100 per month into a common fund to meet the expenses of rent, heat, janitorial and other services.

The premises were leased from Zions Security Corporation and covered a term of 5 years to January 14, 1957. The lease provided: "that neither the lessee nor its legal representative will assign, sublet, or

encumber any part of the leased premises without the written consent of the lessor, first had and obtained thereto; however, lessee may have the right of *substituting occupants* in the improved office space *if one or more of the lessees remove from the premises or other members join the group."*

The lease further provided: "The leased premises shall be used for doctors, dentists and incidental purposes and shall not at any time be used for any unlawful purposes." The defendants decided to move and go into separate quarters and on August 7, 1953, served notice on plaintiffs of their intention to vacate the premises. Said notice contained the following: "Notice is hereby given that said premises will be vacated by the undersigned on or about the first day of November, 1953, and that at said time the participation of the undersigned in said partnership which was designated as such partnership for the purpose of entering into that certain lease agreement between the Zions Security Corporation and said Cache Valley Medical Group of Logan, Utah shall cease and terminate."

A controversy arose between plaintiffs and defendants as to their rights and obligations and on December 9, 1953, a contract (referred to in both briefs as a compromise agreement) was executed.

The contract provided in part as follows: "C. J. Daines and M. C. Daines agree to pay the Cache Valley Medical Group *their portion of the incompleted lease* to the Latter Day Saints Church authorities (Zions Security Corporation) for *the* space now occupied by the Cache Valley Medical Group * * * the amount of the monthly payment will be $55.00.

"The Cache Valley Medical Group agrees to pay to C. J. Daines and M. C. Daines the sum of $20. per month for the duration of the lease as compensation for *the space heretofore jointly used* by C. J. Daines, M. C. Daines and other members of the Cache Valley Medical Group prior to December 1, 1953, *but which was vacated* by C. J. Daines and M. C. Daines as of said date.

"The Cache Valley Medical Group agrees * * * to pay to C. J. Daines and M. C. Daines their portion (one-third) of the value of joint property is $2400. * * *."

"The Cache Valley Medical Group further agrees to pay to Doctors C. J. Daines and M. C. Daines their portion of the present fund now deposited in the bank that has accumulated from x-ray fees and overpayment of rents. * * *

"The Cache Valley Medical Group agrees to pay to Doctors C. J. Daines and M. C. Daines their portion (one-third) of the collections from the uncollected x-ray fees up to December 1, 1953, after deducting technician's fees. * * *

"It further agreed that if the space upon which Doctors C. J. Daines and M. C. Daines are paying rent is subleased or rented to another party *other than a member of the now existing group, thereby in-*

creasing the revenue received by the Cache Valley Medical Group, that Doctors ·C. J. Daines and M. C. Daines are no longer obligated to pay rent on said space while so rented.

"It is understood and agreed by all the undersigned that by the signing of this agreement Dr. C. J. Daines and Dr. M. C. Daines are no longer members of the Cache Valley Medical Group and that all connections whatsoever character and nature are severed and the members of the said Cache Valley Medical Group agree to save and hold harmless the said C. J. Daines and M. C. Daines from any and all liability and damages which may be incurred by the Group after December 1, 1953."

Early in February, 1954, plaintiff Dr. C. C. Randall moved out of Room 3 and into Rooms 4 and 5 formerly occupied by Dr. M. C. Daines. The defendants paid the $35 provided for in the contract for the months of December, 1953 and January, 1954, but upon learning that Dr. Randall had moved into the rooms formerly occupied by Dr. M. C. Daines, tendered $17.50 for the month of February, 1954, and advised plaintiffs that so long as plaintiffs occupied 4 and 5 they would only pay $17.50 per month. Defendants did agree to pay $35 per month so long as the space occupied by them on December 9, 1953, was left vacant.

The trial court made, among others, the following findings of fact:

(9) "That said occupancy and use of part of defendants' space by the plaintiff, C. C. Randall, was and is not authorized by the defendants and was and is without the defendant's consent, or the consent of either of them, and that the court specifically finds that said occupancy and use constitutes an eviction of the defendants from part of the space upon which they have agreed to pay rent and are paying rent, and that it would be unpracticable to sublease said space or rent the same so long as Dr. Randall still holds possession.

(11) "That the Court finds that under the December 9, 1953, agreement the defendants agreed to pay the net rent specifically on that portion of the premises formerly used by them as offices and examining room, and that under said agreement the defendants were entitled to sublease said space upon which they were and are paying rent for medical or quasi-medical purposes consistent with the services performed by Cache Valley Medical Group.

(12) "That the plaintiff, C. C. Randall stated and the court finds that he, Dr. C. C. Randall, would be unwilling to vacate said space now occupied by him even though the same were sublet by the defendants unless said C. C. Randall gave his express personal approval to the selection of subtenants.

(15) "The court further finds that so long as the plaintiffs and their agent, Dr. C. C. Randall, or any of the plaintiffs or their agents occupy the space, or part of the space, upon which the defendants have agreed to pay rent, that the defendants

should be relieved from paying a proportionate part of said agreed rental, and the court specifically finds that the possession and use by Dr. Randall of the office and examining room formerly occupied by the defendant, M. C. Daines, reduces by approximately one-half the amount of space available to the defendants.

(16) "That plaintiffs were given five days to vacate said space before judgment, but have declined to do so."

The court made, among others, the following conclusions.

"1. That the possession, occupancy and use by Dr. C. C. Randall of the two rooms formerly occupied by M. C. Daines constitutes an eviction of the defendants by the plaintiffs of part of the space upon which the defendants have agreed to pay rent under the agreement of December 9, 1953.

"3. That defendants are entitled to retain the space in question as their own or to sublease or rent same to other reputable M. D.'s or for any other purpose consistent with the standards and practices of the Cache Valley Medical Group. * * *"

The question presented is the correctness of the court's construction of the contract executed December 9, 1953.

There was no agreement either written or oral so far as the evidence discloses that any doctor was to occupy any particular space or rooms. The lease with Zions Security Corporation leased to plaintiffs and defendants as one group. "the basement floor now occupied and the next floor above, both served by the west entrance." No doctor was assigned any particular space under the lease. There was testimony to the effect that previously when any space was vacated any member of the partnership had been free to occupy that space if he desired and if agreeable to the group.

The defendants contended that under the contract of December 9, 1953, they were entitled to retain the space they occupied when they moved out as their own and that they had the right to rent or sublease the same. It was defendant's position that they could use the space for storage or for an x-ray room or sublet the same to a lawyer, a nurse or an accountant.

As we interpret the contract, considered with the lease from Zions Securities Corporation, the decision cannot be sustained.

The lease provided that the lessee could not sublet any part of the leased premises without the written consent of the lessor. The lessee was, however, given the right to *substitute occupants if one or more of the lessees* removed from the premises or *other members joined the group.*

As we interpret the lease the parties had in mind maintaining a Doctors Clinic—a Medical Group—in the leased premises. The idea of permitting others than doctors in the premises would seem not to have been contemplated.

The lease further provided that the premises should be used for doctors, dentists and incidental purposes.

■ We are of the opinion that the partnership was not free to sublease or rent to any one without the written consent of the lessor. Certainly the defendants would have no greater rights. No written consent was ever granted by the lessor so far as the record discloses.

Let us now turn to the contract dated December 9, 1953.

Under the agreement the defendants agreed to pay to the plaintiffs *their portion* of the incompleted lease for *the space now occupied by the Medical Group* in the amount of $55 per month, but the plaintiffs were in turn to pay to defendants $20 per month as compensation for *the space theretofore jointly used* by the entire group, to wit—waiting room, x-ray room, hallways, laboratory, lavatory and elevator.

By the last mentioned provision the defendants retained no interest in the space jointly used. They had been paid for the rights that they had had in the hallways, reception room and other space jointly occupied.

The last paragraph of the contract took defendants out of membership in the Cache Valley Medical Group—the lessee of the building.

The next to the last paragraph of the contract contains the provision on which the parties most sharply divide.

It provides that if the space upon which Doctors C. J. and M. C. Daines are paying rent is subleased or rented *to another party other than a member of the now existing group, thereby increasing the revenue received* by the Cache Valley Medical Group, that the defendants are no longer obligated to pay rent on said space *while so rented.*

■ We are of the opinion that the contract cannot be construed as giving defendants the right to either occupy, use, rent or sublease the space formerly occupied by them.

It would be strange indeed to hold that the defendants could occupy the space which they had just surrendered and pay $35 per month for what they had theretofore paid $200 per month.

If defendants occupied the space or used it for storage or as an x-ray room or put in a tenant, it would be necessary for defendants or the tenant to pass through plaintiff's reception room and the hallways and make public plaintiff's private business.

The contract cannot be interpreted as giving defendants the right to use the space after plaintiff had paid defendants for the exclusive use thereof.

Dr. Randall asserted during the trial that he would vacate rooms 4 and 5 if a tenant were obtained agreeable to the group. The right to pass upon such a tenant if one was proposed would necessarily be lodged with the plaintiffs or the defendants or both (subject to consent of the lessor). We believe that right must necessarily rest with the plaintiffs—the lessee of the premises. Certainly plaintiffs could refuse to rent to

a Faith Healer, a health food store and numerous other tenants that might be proposed.

It may be observed in passing that the notice given by defendants of their intention to move did not mention any particular rooms as being occupied by them. Neither the defendants nor the court treated the space (rooms 4 and 5) taken over by Dr. Randall as rightfully belonging to Dr. M. C. Daines. Had that been the case Dr. M. C. Daines would have refused to pay any rent and Dr. C. J. Daines would have continued to pay rent on the space he had occupied. The court treated the case as if both doctors had been evicted from one-half of the space both occupied.

The contract is not artfully drawn and appears to have been drawn without outside assistance. We are permitted only to construe the contract so as to give effect to the entire agreement without ignoring any part thereof.

The agreement after setting out the amount to be paid per month by the defendants and allowing credit for the space theretofore used jointly contains this language: " * * * if the space upon which Drs. C. J. Daines and M. C. Daines are paying rent is subleased or rented *to another party other than a member of the now existing group*, thereby increasing the revenue received by the Cache Valley Medical Group that Doctors C. J. Daines and M. C. Daines are no longer obligated to pay rent on said space while so rented."

The Cache Valley Medical Group when the contract was executed consisted of the four plaintiffs. The contract recites in the first paragraph thereof:

"This agreement made and entered into between L. K. Gates, E. L. Hanson, R. O. Porter and C. C. Randall (Cache Valley Medical Group), and C. J. Daines and M. C. Daines."

Had it been the intention that none of the plaintiffs should occupy any of the space formerly occupied by the defendants or either of them it would have been a simple matter to have so provided.

The record affirmatively shows that the occupancy of rooms 4 and 5 by Dr. Randall did not increase the revenue received by the plaintiffs. It is likewise established that there has been no renting or subleasing of any part of the premises, nor has any offer been made by respondents to provide a tenant, nor has any request been made that the space be turned over to any person other than the defendants to be used by them for storage or to be left vacant. To construe the contract so as to justify the conclusion of the court is to completely ignore the following language: *"To another party other than a member of the now existing group."*

If and when a tenant is provided or an offer is made for the space, and plaintiffs refuse to permit the occupancy by such proposed tenant, then the question as to whether such tenant may be refused the space on the ground that he is not acceptable can be determined at that time. The judgment is

reversed with directions to enter judgment in accordance with the views expressed herein. Costs to appellant.

McDONOUGH, C. J., and HENRIOD, CROCKETT and WADE, JJ., concur.