427 P.2d 387

Ruth MARKS, Plaintiff and Respondent,

v.

CONTINENTAL CASUALTY CO., Defend-
ant and Appellant.

No. 10656.

Supreme Court of Utah.

May 5, 1967.

**120**

Hanson & Baldwin, Rex J. Hanson, Salt Lake City, for appellant.

Dwight L. King, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

The plaintiff, Ruth Marks, sued for the cost of hospitalization and medical expenses for an operation on her back, claiming coverage by defendant, Continental Casualty Company. Neither the writing of the coverage, nor the payment of premium, in May, 1963, is disputed. Defendant based its refusal to pay on two grounds: (1) that plaintiff made misrepresentations in applying for the insurance; and (2) that the operation was to correct a condition which existed prior to the insurance coverage. Upon a trial to the court it made findings against the defendant on both issues and gave judgment for the plaintiff

1. The statute was repealed and a comparable provision was substituted. S.L.U.

in the amount of $1,783.70. Defendant insists that the evidence does not support the findings and judgment.

At the time the insurance contracts were entered into, Section 31–19–8, U.C.A.1953, was in effect.[1] It provided in substance that no misrepresentation would void the policy unless it was made with intent to deceive, but that if a misrepresentation was in fact made, the burden of proving it was not made with intent to deceive is upon the insured.

For the purpose of considering defendant's first contention, we set aside for the moment consideration of the nature and effect of alleged *mis*representations in plaintiff's application, and direct our attention to the question whether the evidence justifies the trial court's findings that the representations which were made, were not made with intent to deceive.

The questions and answers which the defendant asserts were false and the contrasting facts are as follows:

Q: Have you or any dependents named, ever been medically treated for or medically advised for any of the following:

A * * *

B *Paralysis,* epilepsy, nervous breakdown, or any other brain or nervous disorder.

1963, Ch. 45, Sec. 2, now Sec. 31–19–8, U.C.A.1953.

A: No.

The contrasting fact: that she had been in an automobile accident in 1957 in which she got a puncture wound in her arm, necessitating hospitalization and treatment, and the examination showed "partial paralysis" of median, ulnar and radial nerves of her forearm.

Q: F Arthritis, rheumatism, *back, spine, bone,* joint or muscle *disorder.*
\* \* \*

A: No.

The fact: that plaintiff had had a coccygectomy (removal of the vestigial tailbone) in 1954; and also she had seen a doctor in 1955 regarding an accidental fall on her buttocks with resulting pain in her back and leg.

In support of her contention that she had no intent to deceive, the plaintiff testified to these facts: This insurance was purchased for her by her former husband from an agency in Tulsa, Oklahoma, through an agent who was also her brother-in-law. The agent had known her well and had been closely associated with her and her family for many years. She told him in a letter about her prior operation. He mailed her an application form with a note attached saying, " \* \* \* you can just sign it and mail it back if you want to, and I will take care of it from there." Pursuant to his suggestion she had signed the application in blank and returned it to him.

The defendant places reliance on the recent case of Theros v. Metropolitan Life Insurance Co.,[2] which held that the insured was presumed to have read the application and to know its contents. It will be noted that there are significant differences in the facts shown here. In the Theros case the agent was present with the insured in the latter's home, filled out the false answers in his presence, and handed the application to the insured for his signature. The case held that under those circumstances the beneficiaries could not be heard to say that the insured was not aware of the false answers, particularly where just above his signature it stated:

I have read the foregoing answers before signing. They have been correctly written, as given by me, and are true and complete. There are no exceptions to any such answers other than as stated therein.

It is important that in the instant case there is no such provision in the application. This, together with the additional facts just recited, where this whole transaction was carried on through the mails, present a situation from which the trial court could reasonably believe that the plaintiff did not intend to deceive the defendant company. This is particularly so

2. 17 Utah 2d 205, 407 P.2d 685 (1965).

when considered in connection with the next aspect of the evidence we discuss, which supplements what we have said above, and supports the conclusion just stated.

The plaintiff's further position is that even if the transaction had been face to face with full opportunity to read the answers, she would not have regarded them as false or as misrepresenting the facts. Illustrative of this is her testimony relating to the claimed falsehood about paralysis of her arm resulting from the automobile accident six years before, in 1957:

Q: You understand what the word "paralysis" is?

A: My body wasn't paralyzed.

Q: I didn't ask you that. Was your *arm* paralyzed?

A: My fingers were not paralyzed.

Q: Was *any part of your arm* paralyzed by your nerve injury?

A: I don't understand what you are trying to determine from me. I had no control of my wrist, and I had to keep my wrist in a cast to control it. *I wouldn't call that actually paralysis.*

In regard to the question concerning whether she had had any back or bone disorders, plaintiff was asked on direct examination:

Q: * * * The answer is "no" on that. Is that the answer which you considered to be accurate?

A: Well, I think that is an accurate answer, yes.

Q: And as far as you know at that time was that an accurate answer?

A: Yes, it was.

When one is charged with a falsehood or a misrepresentation, in order for it to be actionable or to deprive him of a right, it must be done wilfully and knowingly.[3] It is true that in the technical sense the word "paralysis" may mean the inability of individual muscles and/or nerves to function. But in common usage it is also understood as meaning the non-functioning of an entire limb or part of the body. Plaintiff admits that she could not control her wrist, which required support by a cast, but she could use her arm and her fingers. As a lay person she was not obliged to know the technical meaning of the terms used, but only to know the meaning in common usage.

This also applies to plaintiff's answer as to a "back or bone disorder." The coccyx bone is the vestigial tailbone at the end of the spine. It is nonfunctioning and useless and sometimes gives trouble requiring its removal. This had occurred to the plaintiff nine years before the is-

---

3. Wootton v. Combined Insurance Company of America, 16 Utah 2d 52, 395 P.2d 724.

:suance of this insurance. We see nothing incongruous or irrational about the trial court's view as reflected by his findings that the plaintiff was sincere in her belief that these injuries she had experienced, and from which she had recovered some years before, should not be regarded as either "paralysis" or "back or bone disorders" and consequently that she did not wilfully and knowingly falsify her answers. This conclusion is buttressed by the fact that the application is in agreement with the company's own agent's interpretation of the same facts.[4]

The defendant's second contention: that the plaintiff's operation was required because of a condition existing before the insurance coverage, is based on the report made by the intern, Dr. Rytting, that when plaintiff entered the hospital she said she had had intermittent pains in her lower back ever since her fall in 1955, which were sometimes so severe that she could not get out of bed. Supplementing the above, the deposition of the orthopedic surgeon, Dr. Robert Lamb, stated his opinion that:

* * * in view of the fact that she stated that she had had continued symptoms since that time, there would *possibly, probably* be a connection between that and her present condition insofar as her symptoms had been recurrent intermittently since then.

There are two difficulties with the defendant's contention that this evidence compels a finding in its favor. First, it will be noted that the statement of Dr. Lamb uses the word "possibly" as well as "probably." There is therefore a reasonable basis for some uncertainty as to whether before she was insured she had a back injury which would require surgery. But the more fundamental obstacle to defendant's position is that there is a dispute as to the facts stated by the intern, upon which Dr. Lamb's statement is based. The plaintiff's evidence was to the effect that the intern must have misunderstood her statements concerning her symptoms; that she had indeed told him about her fall in 1955; and that she had had an occasional backache since, but that it was of the ordinary kind of backache anyone would have from stooping and lifting as she did on occasion. She said that when the insurance was taken out she had had no unusual back troubles until a few months before the operation, when she began to have severe pains, at times was unable to get out of bed, which made it imperative that she seek medical assistance and the eventual hospitalization and surgery for which she seeks reimbursement.

In surveying this case in the light of the traditional rules of review: that it is the prerogative of the trial court to judge

---

4. See New York Life Ins. Co. v. Grow, 103 Utah 285, 135 P.2d 120.

the credibility of the witnesses and to find the facts; that we review the evidence in the light most favorable thereto; and that they will not be disturbed if there is a reasonable basis in the evidence to sustain them, we are not persuaded that there is any ground for upsetting the judgment.[5] (All emphasis added.)

Affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

5. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.