470 P.2d 261

Patricia M. BURNHAM, Plaintiff and Appellant,

v.

BANKERS LIFE & CASUALTY COMPANY, an Illinois corporation, Defendant and Respondent.

No. 11924.

Supreme Court of Utah.

June 2, 1970.

Robert M. Yeates, Denis R. Morrill, Kenneth W. Yeates, of Mulliner, Prince & Mangum, Salt Lake City, for plaintiff and appellant.

Don J. Hanson, of Hanson & Garrett, Salt Lake City, for defendant and respondent.

CALLISTER, Justice:

Plaintiff, the designated beneficiary, initiated this action to recover the balance due on a decreasing term rider in an insurance policy issued on the life of her husband, Preston J. Burnham, deceased. The defendant insurance company alleged that the policy was issued January 1, 1962, and lapsed upon failure to pay premiums on April 1, 1967. Thereafter, the policy was reinstated on July 21, 1967, pursuant to an application by the insured, wherein there was contained a provision that the applicant and company agreed that the reinstatement of the policy should be contestable on account of fraud or misrepresentation in material facts therein stated at any time within two years from the date of approval thereof. Defendant alleged that the insured made a misrepresentation of material fact and that if said fact had been known to the defendant, the policy would not have been reinstated.

Subsequently, defendant filed a motion for summary judgment based on the pleadings, a deposition of Dr. Herbert B. Fowler, and the affidavit of defendant's attorney. The defense attorney in his affidavit asserted that Preston J. Burnham, in response to a question on the application for reinstatement, represented that the only physician or practitioner whom he had consulted or who had treated him during the past five years was L. Bert Green, M. D., whom he had consulted for an upper respiratory infection in June of 1967. The affidavit continued with a statement that the insured had in fact consulted on a professional basis on eighty occasions between 1963 and 1965 with Dr. Herbert B. Fowler, M. D., a psychiatrist. The defense attorney swore that had the company known the insured was seeing a psychiatrist and had expressed suicidal tendencies, the policy would not have been reinstated. The affidavit further contained a statement that the insured committed

suicide on February 20, 1968. Defense counsel concluded with an assertion that the insurance company did not learn of the foregoing information until after the death of the insured at which time the company elected to rescind that portion of the contract concerning the decreasing term rider.

The trial court in a memorandum decision stated that the governing issue was whether the failure of the insured in his application for reinstatement to disclose his numerous visits to Dr. Fowler [1] constituted a fraud upon the insurance company. The trial court reasoned that under Section 31–22–18(2), U.C.A.1953, the insurance company had a right upon reinstatement of the policy to exclude or restrict liability to the same extent as when the contract was originally issued. The company could have inserted as one of the terms of reinstatement the two-year restriction against the beneficiary collecting on account of death by reason of suicide. Disclosure by the insured of his consultations with Dr. Fowler would have enabled the insurer to consult the psychiatrist and based on the information obtained the company would have had the option to insert the two-year contestability restriction concerning death by suicide. The insured's failure to disclose prevented the insurer from exercising its right to evaluate the information it might have obtained from Dr. Fowler and to apply restrictions to the reinstated policy. The court ruled that this failure to disclose was a misrepresentation by omission and a fraud upon the insurer. The court granted defendant's motion for summary judgment.

It should be observed parenthetically, although it is not dispositive of the issues of this action, that a summary judgment was inappropriate because there were disputed issues of material facts. First, unless the misrepresentations in the negotiation for an insurance policy are made with intent to deceive and materially affect either the acceptance of the risk or the hazard assumed by the insurer, the insurance contract cannot be avoided by an in-

1. The deposition of Dr. Fowler revealed that insured and his wife consulted the psychiatrist strictly as a marital counselor, that such counseling could be done by a non-medical person, that no psychotherapy was given and no medication was administered, that the last consultation was in November of 1965, that the major problem was one of basic communication between husband and wife, and that the parties made progress as a result of counseling. The psychiatrist stated that at times the insured was depressed; the depression was directly related to the marriage, i. e., the pressure of the marital conflict was upsetting emotionally. The psychiatrist testified that several times the insured, casually and in a manner that the majority of his patients did, stated, "I wish I were dead," or "I would be better off dead." The psychiatrist pointed out that this was standard for people who are having severe conflicts. The doctor stated that, during the time period from 1963 to 1965, while he was counseling the Burnhams, he had no occasion to believe that the insured might actually commit suicide.

surance company. Mere falsity of answers to questions propounded are insufficient if not knowingly made with intent to deceive and defraud.[2] Second, whether or not a misstatement in an application is material to the risk, while it is for the jury to determine, depends not upon what the insurer or the insured may think about the materiality or the importance of the false information given or the true information withheld, but upon what those engaged in the insurance business, acting reasonably and naturally in accordance with the usual practice among insurance companies under such circumstances, would have done had they known the truth; that is, whether reasonably careful and intelligent men would have regarded the facts stated as substantially increasing the chances of the happening of the event insured against so as to cause a rejection of the application.[3]

There are three relevant provisions in the insurance contract; they provide:

### Incontestability

This policy shall be incontestable after it has been in force during the lifetime of the Insured for two years from its date of issue, except for nonpayment of premiums, * * *

### Suicide

If within two years from the date of issue of this policy the Insured shall die by suicide, while sane or insane, the liability of the Company shall be limited to an amount equal to the premiums which have been paid for this policy.

### Reinstatement

This policy may be reinstated (unless previously surrendered for its cash value) at any time within 5 years after default in premium payment, upon furnishing evidence of insurability satisfactory to the Company, all the payment of all past due premiums with interest compounded at 5% per annum * * *.

In Gressler v. New York Life Insurance Company[4] this court determined that under Utah law a life insurance policy with a clause providing for reinstatement after lapse for nonpayment of premiums upon presentation of evidence of insurability satisfactory to the insurer, is not entirely terminated upon default of the premium payment, for the insured has a contractual right under the policy to reinstate fully upon compliance with the conditions for reinstatement contained in the policy. Furthermore, an application for reinstatement is *neither* an offer to enter into a *new*

2. Wootton v. Combined Insurance Company of America, 16 Utah 2d 52, 54–55, 395 P.2d 724 (1964) ; Marks v. Continental Casualty Company, 19 Utah 2d 119, 122, 427 P.2d 387 (1967).

3. 17 Couch on Insurance 2d, Sec. 69 :120, p. 779.

4. 108 Utah 173, 156 P.2d 212, modified on rehearing 108 Utah 182, 163 P.2d 324, 164 A.L.R. 1047 (1945).

*contract of insurance nor* an offer to enter into a *contract to reinstate the old policy;* rather it is the first step taken to comply with the conditions of reinstatement. The Gressler case is cited in 17 Couch on Insurance 2d as an example of the continuing contract concept.[5]

■■ In the instant action, by the express terms in the suicide clause, time is to be reckoned "from the date of issue of this policy," not from the date of reinstatement. By the reinstatement clause, the insured was given an absolute right to reinstate upon payment of the amount in default and production of evidence of insurability satisfactory to the company.[6] The company cannot by reason of the reinstatement clause, ingraft on the contract a new condition or otherwise restrict its liability by conditions not contained therein.[7]

The decision of the trial court was based on the provisions in Section 31–22–18(2), U.C.A.1953, which provides:

When any life insurance policy or annuity contract is reinstated, such reinstated policy or contract may exclude or restrict liability to the same extent that such liability could have been or was excluded or restricted when the policy or contract was originally issued, and such exclusion or restriction shall be effective from the date of reinstatement.

The foregoing statute was enacted in 1963; the insurance policy in this action was issued in 1962.

Whether the reinstated policy is merely a continuation of the original contract becomes significant where there has been a change of the law so that if the reinstatement is in fact a new contract it is governed by different principles.[8]

■ Since this jurisdiction is firmly committed to the doctrine that a reinstated policy is a continuation of the original contract, a subsequent legislative enactment cannot vary or alter the terms of a contract of insurance previously made by the parties. Another aspect that should be considered is that even if the statute were applicable, *its provisions are expressed strictly in permissive terms*, and the insurer may not add new conditions or restrictions upon reinstatement of the policy which were beyond the specific conditions in the reinstatement clause of the original contract.

5. Sec. 69:43, p. 730.

6. As to the evidence which will be deemed to satisfy the company, the company cannot be arbitrary or capricious; all that is required is that the evidence should be satisfactory to a reasonable insurer. Gressler v. New York Life, note 4, supra.

7. 98 A.L.R. 344, 346, Anno: Insurance—Suicide Clause—Reinstatement.

8. 17 Couch on Insurance 2d, Sec. 69:42, p. 729.

■ Finally, there is the issue of the validity of the new contestability period ·contained in the application for reinstatement, which provides:

> The applicant hereunder and the Company hereby agree that reinstatement of said policy, as granted by the Company at its Home Office upon this application, shall be contestable on account of fraud or misrepresentation in material facts herein stated at any time within two years from the date of approval hereof.

The language of this provision is in effect an attempt on the part of the insurer to make a contract of reinstatement. As previously stated this court has specifically rejected the concept that an application for reinstatement is an offer to enter into a contract to reinstate the old policy but is merely a step to comply with the conditions specified by the company in the reinstatement clause of the insurance contract.[9] The contractual provisions in the reinstatement application are a nullity under Utah law.

■ This court is cognizant of the additional period of contestability upon reinstatement granted by legislative enactment in 1963 by Section 31–22–18(1); however, this provision is not applicable to the instant action.[10] This new statute was undoubtedly a legislative response to a serious omission in the law which had previously provided that the policy shall be incontestable after it shall have been in force during the lifetime of the insured for a period of two years from its date, except for the nonpayment of premiums, Section 31–22–1(3), U.C.A.1953.

In the instant action, since the reinstatement was not, in contemplation of law, a new contract, but a continuation of the original policy, there is no ground upon which to predicate the revival of the contestability period after it has expired under the terms of the contract.[11] Under the reinstatement clause the insurer was accorded the right to require whatever evidence of insurability it deemed satisfactory and a fair opportunity to make a complete

---

9. See note 4, supra.

10. See 18 Couch on Insurance 2d, Sec. 72:19, pp. 52–53; Occidental Life Insurance Company of California v. Sobieski (CA 5th, 1966), 359 F.2d 382, wherein the court held that a Florida statute relating to the contestability of a reinstated life insurance policy for misrepresentation of facts material to the reinstatement cannot be applied to a policy issued before enactment of the statute.

11. "The incontestability clause in a life insurance policy precludes the insurer, after the expiration of the period provided for contest, from making the defense that statements in an application for reinstatement were false, since the reinstatement cancels the forfeiture and leaves the original policy in full force and effect." 18 Couch on Insurance 2d, Sec. 72:52, p. 74; also see 1 Appleman Insurance Law and Practice, Sec. 320, pp. 573–574; 23 A.L.R.3d 743, Anno: Insurance—Incontestable Clause, Sec. 5, pp. 756–758.

investigation prior to reinstatement. When the insurer finally determined that the conditions for reinstatement had been fulfilled, the original policy was again in full force and effect as if there had been no prior lapse.

The judgment of the trial court is reversed and remanded for the disposition in accordance with this opinion. Costs are awarded to plaintiff.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.