Grace BERGERA, Plaintiff and Appellant,

v.

IDEAL NATIONAL LIFE INSURANCE COMPANY, Defendant and Respondent.

No. 13525.

Supreme Court of Utah.

July 16, 1974.

---

1. See Bradbury v. Rasmussen, 16 Utah 2d 378, 401 P.2d 710 (1965).

S. V. Litizzette, Helper, for plaintiff and appellant.

John S. Boyden and Scott C. Pugsley of Boyden & Kennedy, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

The plaintiff is the beneficiary of a life insurance policy containing a double indemnity provision in case of the accidental death of the insured. The insured died of injuries received while serving in the army of the United States in Vietnam. He was fatally injured when he accidentally detonated a mechanical ambush device while returning to a night defensive position. At the time, the United States had a great number of military personnel engaged in personal combat operations against soldiers of North Vietnam.

The policy of insurance contained the following provision:

### RISKS NOT COVERED

No benefit will be paid if death results directly or indirectly from:

\*    \*    \*    \*    \*    \*

2. War, any act of war, or service in an armed force of any international organization, or any country or combination of countries at war ("act of war" means any act peculiar to military operations in time of war);

\*    \*    \*    \*    \*    \*

Each party to this action moved for summary judgment, and the trial court ruled in favor of the defendant. This appeal followed, and the only question involved is this: Was the military operation of our armed forces in Vietnam "war" within the meaning of the exclusionary provision of the policy?

The policy is merely a contract between the insured and the insurer. Its language should be construed pursuant to the same rules as are applied to other ordinary contracts, to wit: What did the parties thereto intend by the language used? Of course, any ambiguities will be construed against the insurer, since the policy was

drawn by it. Words should be given their usual and ordinarily accepted meaning.[1]

To begin our inquiry into the meaning of the exclusion, we should consider the basis for the premium charged for the accidental death provision in the policy. Ordinarily the premiums are based upon the hazards encountered by ordinary people subjected to ordinary hazards, and if the policy is not to cover extra hazardous situations, the insurer must so state. If those unusually hazardous exposures are to be covered, the insurer will charge extra premiums to cover the contingencies.

The insurer in the present matter undertook to exclude death occasioned by (a) war, (b) any act of war, or (c) service in an armed force of any international organization, or any country or combination of countries at war. Since there was an exclusion, no extra premium was required.

There were armed forces from a number of countries engaged in deadly combat in Vietnam. In fact, the United States Armed Forces numbered 543,000 men at one time and sustained loss of lives of 46,079 as a result of its military operations.[2]

By the Tonkin Gulf Resolution the Congress of the United States authorized the President to conduct military operations in Southeast Asia, and while there never was a formal. declaration of war by Congress, there certainly was war in every sense of the term so far as the men who fought it were concerned. There was the extra hazardous situation for the insured exactly the same as if Congress had declared that a state of war existed, and that extra hazardous risk would not have been either augmented or diminished one iota by such a declaration insofar as this defendant insurer was concerned.

The term "war" as defined in Black's Law Dictionary means "hostile contention by means of armed forces, carried on between nations, states, or rulers, . . . . A contest by force between two or more nations, carried on for any purpose, . . . . ."

The American Heritage Dictionary defines the word "war" as a state of open, armed, often prolonged conflict, carried on between nations, states, or parties.

■ When there has been a declaration of war by Congress and hostilities have ceased, the exclusion in insurance policies regarding death in "war" is not effective even though peace has not been determined.[3] This clearly indicates that it is the confrontation of the military forces rather than mere declaration of words which has been the determining factor in determining the meaning of the word "war" in insurance policies.

While there are some cases holding that the exclusion of coverage because of war must be a declared war, the greater weight of authority and the better reasoned cases hold that a war in fact is sufficient to exclude coverage where the insured was killed in an undeclared war. Examples follow.

In Langlas v. Iowa Life Ins. Co., 245 Iowa 713, 63 N.W.2d 885 (1954), the insured was killed during combat duty in Korea. The Iowa Supreme Court held that the Korean conflict was a "war" within the meaning of the exclusionary provisions of the policy although it was never a declared war.

In the case of Zaccardo v. John Hancock Mutual Life Insurance Co., 20 Conn. Sup. 76, 124 A.2d 926 (1956), the Connecticut court held that the exclusionary provision of a policy was in effect since the Korean war was a war whether declared or undeclared.

Weissman v. Metropolitan Life Ins. Co., 112 F.Supp. 420 (S.D.Cal.1953), was a case where the insured lost his life in Korea. In a well reasoned and documented case, the court held that the exclusion was ef-

1.  36 A.L.R.2d 1033.

2.  The World Almanac & Book of Facts 1974, page 48.

3.  44 Am.Jur.2d, Insurance, § 1264.

fective, as the United States was at "war" within the meaning of the policy.

In another case [4] a 19-year-old prisoner of war in Korea made a will which under the statute would not have been admitted to probate had not we been at "war." The will was admitted to probate because, as the court said, the United States was at war within the meaning of the Wills Act.

Another case identical to the instant one is Stanbery v. Aetna Life Ins. Co., 26 N.J. Super. 498, 98 A.2d 134 (1953). There, as here, the soldier lost his life in a mine explosion. The court said:

> The word "war" when used in a private contract or document should not be construed on a public or political basis, in a legalistic or technical sense, but should be given its ordinary, usual and realistic meaning, viz., actual hostilities between the armed forces of two or more nations. . . .

> The conflict still raging in Korea is a war in the ordinary and usual meaning of the word, and it was such on March 27, 1952, when the insured met his untimely death. . . .

Western Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554 (1953), is a case which fully discusses the question of when a war is a war. In holding that the insured died "in time of war" within the meaning of the policy the court said:

> Undoubtedly there may be war or a state of war without a declaration of war by the department of government clothed with the war-making power. Justice Jackson, in his concurring opinion in the steel mills seizure case said: "Of course, a state of war may in fact exist without a formal declaration." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 873, 96 L.Ed. 1153, 1202–1203, 26 A.L.R.2d 1378; Edwin Borchard, discussing under the title "When Did the War Begin", the decision of the United States Circuit Court of Appeals in New York Life Insurance Company v. Bennion, 10 Cir., 158 F.2d 260, and other decisions, said: "It is common knowledge that war may exist without a declaration thereof." And on the authorities reviewed he expressed this conclusion: "It thus appears that war may be deduced from the circumstances as a fact and may exist independently of a declaration by Congress." 47 Columbia Law Review, pp. 742, 745, 748.

> . . . An early opinion by the Supreme Court of Maine contains the following:

> "But every forcible contest between two governments, de facto or de jure, is war. War is an existing fact, and not a legislative decree. Congress alone may have power to 'declare' it beforehand, and thus cause or commence it. But it may be initiated by other nations, or by traitors; and then it exists, whether there is any declaration of it or not. It may be prosecuted without any declaration; or Congress may, as in the Mexican war, declare its previous existence. In either case it is the fact that makes 'enemies', and not any legislative Act." Dole v. Merchants' Mutual Marine Ins. Co., 51 Me. 465, 470.

The Supreme Judicial Court of Massachusetts held that an insured died in military service in time of war when he died in an automobile accident while on furlough.[5]

The Supreme Court of Washington also held that the United States was "a country at war" and denied recovery on a policy on an insured who lost his life in Alaska during the Korean War.[6]

The Missouri Court of Appeals held that the Korean conflict was a war within the meaning of an insurance policy although no war was declared.[7]

---

4. In re Morgan's Estate, 2 Pa.D. & C.2d 480.

5. Gudewicz v. John Hancock Mutual Life Insurance Company, 331 Mass. 752, 122 N.E. 2d 900 (1954).

6. Christensen v. Sterling Insurance Company, 46 Wash.2d 713, 284 P.2d 287 (1955).

7. Lynch v. National Life and Accident Insurance Company, Mo.App., 278 S.W.2d 32 (1955).

The North Carolina Supreme Court likewise denied recovery on a policy because the insured lost his life in Korea while in the military in time of war.[8]

The annotation found in 36 A.L.R.2d 1028 entitled "Insurance—Military Service Clause": contains the following statement:

> It is submitted that regardless of technicalities, the sounder view is to include undeclared wars under the term "war" as used in military exclusion clauses. The reason for this opinion is that, generally speaking, insurance rates are based on the frequency of the risk insured. There can be hardly any doubt that the insurer, in including a military exclusion clause in the policy, intended to insure the life of the insured against the ordinary risks at the premium rate computed from a statistical analysis of the probable life expectancy of an average person in an average occupation. It definitely intended not to cover risks peculiar to military service and specifically not the obvious risk a member of the armed forces is exposed to in a war.
>
> . . . .

Other cases throwing light on the meaning of the word "war" are the following:

In Hamilton v. McClaughry, C.C., 136 F. 445, it was held that a court martial was properly convened to try a soldier for murder in China during the Boxer Uprising. This could only be done in time of war.

In the case of Arce v. State, 83 Tex.Cr. R. 292, 202 S.W. 951 (1918), the Texas courts prosecuted some captured Mexican soldiers and convicted them of murder growing out of the battle of San Ygnacio in Texas. General Pershing had led an expeditionary force into Mexico, and officers of the de facto government of Carranza invaded Texas and killed some soldiers of the United States Army. The Court of Criminal Appeals held that the state courts had no jurisdiction to try the captured soldiers, as they were engaged in war.

There was no declaration of war against the Southern States in the Civil War. The Federal forces captured some Mexican ships caught trading with the South and confiscated them and their cargoes. The cases, known as the Prize Cases, are found in 67 U.S. 635, 17 L.Ed. 459 (1862). In order to hold the prizes, it was necessary that the United States be at war: The decision quotes from Lord Stowell (The Eliza Ann, 1 Dod. 247) as follows: "It is not the less a war on that account, for war may exist without a declaration on either side."

■ We think the trial court properly held that the conflict in Vietnam was a "war" within the meaning of the word used in the policy. The judgment is affirmed. No costs are awarded.

CALLISTER, C. J., and CROCKETT and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

---

8. Lamar v. John Hancock Mutual Life Insurance Company, 249 N.C. 643, 107 S.E.2d 65 (1959).