**Charles FULLER, dba Aero Crop Applicator, Plaintiff and Respondent,**

**v.**

**The DIRECTOR OF FINANCE, in his capacity as Director of the State Insurance Fund, Defendant and Appellant.**

No. 18889.

Supreme Court of Utah.

Jan. 2, 1985.

Fred R. Silvester, Salt Lake City, for defendant and appellant.

Hans W. Chamberlain, Cedar City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals a judgment of the district court requiring the Utah State Insurance Fund ("Fund") to indemnify plaintiff for a California worker's compensation award against him and for attorney fees incurred to defend him in the California proceeding. We affirm.

The case was submitted to the district court on stipulated facts. John J. Ireland applied for worker's compensation in California, claiming that he was injured by inhaling chemicals used in plaintiff's crop dusting business while working for plaintiff in California in September, 1978. Ireland had been hired by plaintiff in Arizona shortly before the alleged injury and had never worked for plaintiff in Utah. A worker's compensation insurance policy issued to plaintiff by the Fund was in effect at the time of the alleged injury. Plaintiff sought a declaratory judgment in the district court that the Fund was obligated to defend him against the claim and to indemnify him for any worker's compensation award resulting from the claim.

The relevant provisions of the policy are these:

[The Fund] does hereby agree ... to insure the Employer against liability for compensation under the Workmen's Compensation Act and the Utah Occupational Disease Disability Law, as provided in Chapters 1, 2, and 3 of Title 35, Utah Code Annotated 1953, and all amendments thereto, including liability to pay for medical and other treatment and care of injured employees as required by said Acts....

....

EMPLOYERS LIABILITY COVERAGE

The Fund will indemnify this Employer against loss by reason of the liability imposed upon him by law for *damages* on account of personal injuries to such of his employees are [sic] are legally employed, wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. The Fund's liability under this endorsement is limited to $100,000.

The Fund will defend, in the name of and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, whether such suits, other proceedings, allegations or demands are meritorious or groundless. [Emphasis added.]

The district court held that the employer's liability provisions covered plaintiff for Ireland's claim. Defendant contends that the holding is erroneous because the term "damages" in employer's liability provisions does not include worker's compensation.

 In interpreting insurance policies, we have held that ambiguities are to be construed against the insurer[1] and that

1. *Utah Farm Bureau Mutual Ins. Co. v. Orville Andrews & Sons*, Utah, 665 P.2d 1308, 1309 (1983); *Bergera v. Ideal Nat'l Life Ins. Co.*, Utah, 524 P.2d 599, 600–01 (1974); *Christensen v. Farmers Ins. Exch.*, 21 Utah 2d 194, 196–97, 443 P.2d 385, 386 (1968); *P.E. Ashton Co. v. Joyner*, 17 Utah 2d 162, 164, 406 P.2d 306, 308 (1965); *Jorgensen v. Hartford Fire Ins. Co.*, 13 Utah 2d 303, 304, 373 P.2d 580, 581 (1962). *See also DiEnes v. Safeco Life Ins. Co.*, 21 Utah 2d 147,

words are to be given their ordinary meaning.[2] An insured is entitled to the broadest protection he could have reasonably understood to be provided by the policy.[3] Applying these well-established principles here, the employer's liability provisions of the policy cover plaintiff for Ireland's claim.

The meaning of the term "damages" as used in the employer's liability provisions of the policy is ambiguous. In its ordinary sense, "damages" is synonymous with "compensation." Webster's dictionary defines "damages" as "compensation in money imposed by law for loss or injury."[4] Courts have also equated the terms.[5] In some contexts, however, the terms are distinguishable. In *Henrie v. Rocky Mountain Packing Corp.*,[6] we distinguished between compensation and damages in defining "compensation" for purposes of article XVI, section 5 of the Utah Constitution:[7]

Compensation is a concept wholly different from that of damages. Damages are based on fault, are generally limited only by the findings and conscience of the jury, and in death cases are payable to heirs or personal representatives without regard to dependency. Compensation, on the other hand, generally has no relation to fault, is fixed or limited by statute, and is payable to dependents only.[8]

Other courts, too, have distinguished between the terms in varying contexts.[9] Thus, in one sense, "damages" includes "compensation," while in another sense, the terms exclude each other.

Defendant argues that the distinction recognized in *Henrie* applies here and that the term "damages" in the employer's liability provisions excludes compensation. This exclusion, he asserts, is apparent from the general purpose of the policy, which was to cover liability for injury to Utah employees. This purpose is accomplished primarily through the provisions that expressly cover Utah worker's compensation liability. The employer's liability provisions merely supplement the worker's compensation coverage by covering the rare instance in which worker's compensation might not be the exclusive remedy against an employer for injury to a Utah employee. Thus, the employer's liability coverage excludes worker's compensation.

It may be, as defendant argues, that the Fund intended the employer's liability provisions to cover only claims other than those for worker's compensation. Courts in other jurisdictions have found employer's liability provisions in worker's compensation policies to exclude coverage for worker's compensation claims.[10] In those

151, 442 P.2d 468, 471 (1968) ("no ambiguous statement is to be enforced against an insured").

**2.** *Bergera v. Ideal Nat'l Life Ins. Co., supra* note 1, at 601. *See also P.E. Ashton Co. v. Joyner, supra* note 1, at 164–65, 406 P.2d 306; *Jorgensen v. Hartford Fire Ins. Co., supra* note 1 (insured entitled to broadest protection reasonably believed afforded by commonly understood meaning of policy's terms).

**3.** *Whitlock v. Old Am. Ins. Co.,* 21 Utah 2d 131, 135, 442 P.2d 26, 28 (1968); *P.E. Ashton Co. v. Joyner, supra* note 1, at 164–65, 406 P.2d 306; *Jorgensen v. Hartford Fire Ins. Co., supra* note 1.

**4.** Webster's New Collegiate Dictionary 323 (9th ed. 1984).

**5.** *Christiansen Bros., Inc. v. State,* 90 Wash.2d 872, 875–76, 586 P.2d 840, 842 (1978). *See, e.g., Thomason v. United States,* 184 F.2d 105, 107 (9th Cir.1950); *Schubert v. Midwest Broadcasting Co.,* 1 Wis.2d 497, 502, 85 N.W.2d 449, 452 (1957).

**6.** 113 Utah 415, 196 P.2d 487 (1948).

**7.** Utah Const. art. XVI, § 5 (providing for wrongful death actions "except in cases where compensation for injuries resulting in death is provided for by law").

**8.** 113 Utah at 427, 196 P.2d at 493.

**9.** *Jones v. Grinnell Corp.,* 117 R.I. 44, 47, 362 A.2d 139, 141 (1976) (weekly benefit payments to injured workman are damages, not compensation); *American La. Pipe Line Co. v. Kennerk,* 103 Ohio App. 133, 137, 144 N.E.2d 660, 665 (1957) (in establishment of pipeline easement, "compensation" is for estate actually taken and "damages" is for injuries to the residue).

**10.** *Sieman v. Postorino Sandblasting and Painting Co.,* 111 Mich.App. 710, 716, 314 N.W.2d 736, 738 (1981); *Hiller v. Firemen's Ins. Co. of Newark,* 61 A.D.2d 1080, 403 N.Y.S.2d 130 (1978); *Travelers Ins. Co. v. Industrial Accident Comm'n,* 240 Cal.App.2d 804, 50 Cal.Rptr. 114 (1966).

cases, however, the exclusion was determined from express language in the policy, not from a distinction between the terms "damages" and "compensation." For example, in *Travelers Insurance Company v. Industrial Accident Commission,*[11] a case cited by defendant in his brief, the policy contained an express exclusion from the employer's liability coverage for

> "any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state designated in Item 3 of the declarations, any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or any similar law." [12]

As these cases demonstrate,[13] if the Fund's intent was to exclude worker's compensation from its employer's liability coverage, it could have easily expressed this intent in unambiguous terms.

Defendant further argues that to construe the employer's liability provisions to cover worker's compensation renders unnecessary the provisions covering Utah worker's compensation liability, contrary to the general rule that a contract should be interpreted to give effect to all its provisions.[14] Under our interpretation, however, there are substantial differences between the two coverages. For example, liability for occupational disease is included in the Utah worker's compensation coverage, although expressly excluded from the employer's liability coverage. Also, total liability of the Fund under the employer's liability coverage is limited to $100,000,

while there is no such limitation in the Utah worker's compensation coverage.[15] These and other differences give effect to the Utah worker's compensation coverage, although both coverages could conceivably apply to a given award for worker's compensation where these differences do not come into play.

Thus, defendant's interpretation of "damages" is not compelled by a reading of the policy as a whole, and any intent to exclude worker's compensation awards from the employer's liability coverage could have easily been expressed. The ordinary meaning of damages includes compensation. At best, the meaning of the term as used in the employer's liability provisions is ambiguous. Plaintiff could have reasonably understood these provisions to cover him for out-of-state worker's compensation liability. Construing the ambiguity against the insurer and adopting the ordinary meaning of the word, the term "damages" as used in the employer's liability provisions of the policy includes compensation. Therefore, facially, these provisions afford coverage for Ireland's award.

Finally, defendant argues that plaintiff's representation on his insurance application that all his business operations were in Utah limits the insurance coverage to claims arising in Utah. We have held that, unless misrepresentations on an insurance application are made with the intent to deceive and unless they materially affect the acceptance of the risk or the hazard assumed by the insurer, the insurer may not avoid the insurance contract.[16] Noth-

---

11. *Supra* note 10.

12. 50 Cal.Rptr. at 118.

13. *See* cases cited *supra* note 10. *See also Dahm v. Employers Mut. Liab. Ins. Co.,* 74 Wis.2d 123, 246 N.W.2d 131 (1976) (exclusion of worker's compensation claims from policy providing only employer's liability insurance).

14. *Larrabee v. Royal Dairy Prods. Co.,* Utah, 614 P.2d 160, 163 (1980); *Minshew v. Chevron Oil Co.,* Utah, 575 P.2d 192, 194 (1978); *Gates v. Daines,* 3 Utah 2d 95, 101, 279 P.2d 458, 462 (1955).

15. Of course, liability under this coverage is subject to the Utah Workmen's Compensation Act, U.C.A., 1953, §§ 35–1–1 to –106, which limits the amount of compensation payable to an injured employee and his dependents.

16. *Burnham v. Bankers Life & Casualty Co.,* 24 Utah 2d 277, 280, 470 P.2d 261, 263 (1970); *Marks v. Continental Casualty Co.,* 19 Utah 2d 119, 122, 427 P.2d 387, 389 (1967); *Theros v. Metropolitan Life Ins. Co.,* 17 Utah 2d 205, 209, 407 P.2d 685, 687 (1965); *Wootton v. Combined Ins. Co. of Am.,* 16 Utah 2d 52, 54–55, 395 P.2d 724, 725 (1964).

ing on the record shows that plaintiff's representation about the location of his business operations was false at the time it was made, in 1976. Even if the representation were untrue, however, nothing on the record shows that it was made with the intent to deceive.[17] Therefore, defendant cannot avoid its obligation under the insurance policy based on plaintiff's representation. The judgment of the district court is affirmed.

STEWART and ZIMMERMAN, JJ., concur.

HOWE, Justice (dissenting):

I dissent. Under the policy, the Fund expressly insured the employer against liability for compensation *only* under the "Workmen's Compensation Act and the Utah Occupational Disease Disability Law as provided in chapters 1, 2, and 3 of Title 35, Utah Code Annotated, 1953, and all amendments thereto...." This limitation is in accord with the statutory authority of the Fund found in U.C.A., 1953, § 35-1-50. That section provides for the payment of compensation from the Fund for injuries or for death "as is provided in this title...." It is undisputed that Ireland was not entitled to compensation under the laws of Utah since he was not hired in nor worked in this state. His claim for compensation and the award to him were made under California law. Clearly, the policy did not insure against that liability.

The Employer's Liability Coverage in the policy does not expand the coverage for compensation beyond our Workmen's Compensation Act and Occupational Disease Disability Law and extend such coverage to workers in other states who are not covered by those statutes. To adopt that interpretation is to render meaningless the express limitation on compensation coverage to liability under our Act and Law. Obviously, the Employer's Liability Coverage provides a different type of coverage. This additional coverage is authorized by section 35-3-5 which provides in part:

> The commission of finance may in its official name make contracts of insurance as herein provided, and such other contracts relating to the state insurance fund as are authorized or permitted under the provisions of this title. Such contracts of insurance may include and cover the entire underlying liability of employers insured in the state insurance fund so that such employers may be fully protected, not only for all *compensation claims* but for all *liability claims* whatsoever by employees or the dependents of killed employees, including the cost of defense in the event of suit.

(Emphasis added.) The statute clearly delineates between compensation claims and liability claims and authorizes the Fund to insure against both. The Employer's Liability Coverage deals only with liability claims. It does not deal with compensation claims. It is a mistake to confuse and equate the two coverages as does the majority opinion when the authorizing statute treats them separately. A liability claim may be made by an employee for *damages* on the premise that compensation is not his exclusive remedy under the peculiar fact situation presented. For example, the claimant may assert that he is not in fact an employee but is an independent contractor. Or, a liability claim may arise where an employee sues a tortfeasor other than his employer for causing an industrial injury, and the tortfeasor brings the employer into the action as a third-party defendant for contribution or indemnity. In these situations, the Fund must pay for the defense of its insured and contend that compensation is the exclusive remedy. However, if an insured employer is found liable for damages to an employee, the Fund must pay the employer up to $100,000. It is to be noted that the policy provides no monetary limit on the Fund's liability for compensation since the amount of compensation awardable is fixed by our statutes.

---

17. *See Wootton v. Combined Ins. Co. of Am.,* 16 Utah 2d at 55, 395 P.2d at 725 ("[m]ere falsity of answers to questions propounded are insuffi- cient if not knowingly made with intent to deceive and defraud").

The majority opinion relies heavily on rules of construction that ambiguities are to be construed against the insurer, that in some contexts "damages" and "compensation" are used interchangeably and that "if the fund's intent was to exclude worker's compensation from its employer's liability coverage, it could have easily expressed this intent in unambiguous terms." While I have no quarrel with these rules when properly applied, they do not apply in this case since the contract of insurance is not ambiguous, and the Fund is expressly authorized by statute to write the two types of coverage for different purposes. The policy clearly delineates between the two. I disagree with the gratuitous assertion by the majority that the plaintiff could have reasonably understood the provisions of the policy to cover him for out-of-state workers compensation liability. The plaintiff did not present any evidence to that effect, and he does not claim that the Fund ever represented to him that the policy included coverage for out-of-state workers.

Had the insured examined the policy, he would have discovered that it did not include coverage for compensation for workers who are not subject to the Utah Act, *viz.*, who were neither hired in Utah nor worked in Utah.

I would reverse the judgment which requires the Fund to indemnify the plaintiff for the award of compensation made to Ireland under California law, for plaintiff's attorney fees in the California administrative action, and for his attorney fees in this action.

DURHAM, J., concurs in the dissenting opinion of HOWE, J.