[No. 45376.   En Banc.   November 9, 1978.]

CHRISTIANSEN BROTHERS, INC., *Respondent,* v. THE
STATE OF WASHINGTON, ET AL, *Respondents,*
DETWEILER BROTHERS, INC., *Appellant.*

*Patrick A. Sullivan, Lawrence H. Vance, Jr.,* and
*Winston & Cashatt,* for appellant.

*Slade Gorton, Attorney General,* and *John E. Heath, Jr.,* and *Thomas D. Cochran* (of *Witherspoon, Kelley, Davenport & Toole), Special Assistants,* for respondent State.

*Lane, Powell, Moss & Miller,* by *Arthur W. Harrigan, Jr.,* for respondent Naramore, et al.

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* by *Sam E. Baker, Jr.,* for respondent Christiansen Brothers.

DOLLIVER, J.—This case originated as an action by Christiansen Brothers, Inc., against the State of Washington to recover damages allegedly arising out of delays in the construction of two buildings at Washington State University (WSU). Detweiler Brothers, Inc., joined the original action as a party plaintiff. The State, as a third–party plaintiff, then brought an action against the architectural firm, Naramore, Bain, Brady and Johanson (NBBJ). During trial, WSU and the architectural firm settled with Christiansen.

On or about February 26, 1968, the State entered into a contract with NBBJ whereby NBBJ, as a part of its agreement, contracted to design and prepare the plans and specifications for the construction of two separate side–by–side structures at WSU. One structure was a 15–story laboratory and classroom tower and the other a 3–story lecture hall unit. NBBJ did not contract to coordinate the work.

Pursuant to construction of the project, five separate prime contracts were executed by WSU and various contractors. Christiansen agreed to perform the "General Work Construction" for $3,869,800 and Detweiler Brothers, Inc., agreed to perform the "Mechanical Work Construction" for $2,246,575. Subsequent change order work increased the contract amounts of Christiansen and Detweiler in the respective amounts of $39,989.02 and $64,563.19.

Although the contract called for completion by May 6, 1973, the trial court found Detweiler's substantial completion did not occur prior to November 18, 1973, and total

completion did not occur prior to March 15, 1974. The court determined the delay to be caused by: architectural design errors, the time other contractors took to perform change order work, acts of Christiansen and Permalab (another contractor), weather, and lack of job coordination. The court further found such factors "obstructed and delayed" Detweiler's performance and increased its cost in the amount of $227,753.

The contract executed between WSU and Detweiler included these articles:

Article 17. Delays and Extension of Time

If the Contractor is delayed at any time in the progress of work by any act or neglect of the Owner or the Architect, or of any employee of either, by any separate Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties, or by delay authorized by the Architect pending arbitration, or by any cause which the Architect shall decide justifies the delay, then the time of completion shall be extended for such reasonable time as the Architect may decide.

No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect. In the case of a continuing cause of delay, only one claim is necessary.

If no schedule or agreement stating the dates upon which drawings shall be furnished is made, then no claim for delay shall be allowed on account of failure to furnish drawings until two weeks after demand for such drawings and not then unless such claim is reasonable.

In no event shall any delays or extensions of time be construed as cause or justification for payment of extra compensation to the Contractor.

Article 30. Damages

Should either party to this Contract suffer damages because of any wrongful act or neglect of the other party or of anyone employed by him, claim shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration.

After reviewing the contract, the court entered finding of fact No. 38 to which no error is assigned:

The types of delays in work performance experienced by Detweiler on the project and which caused its increased cost of performance were the type of delays contemplated by the contracting parties on a project of this nature. Any recovery for such increased costs is controlled by the contractual remedies provided in the Detweiler and WSU contract.

After finding article 17 precluded recovery by Detweiler, the court went on to establish the amount of damages to which Detweiler would be entitled in the event of reversal on the issue of liability. It further held if WSU is liable to Detweiler, then WSU would be entitled to recover a portion of its total liability on its various cross claims and third–party claims for indemnity from NBBJ and Christiansen. From these rulings, (1) Detweiler appeals the determination of no liability; (2) the State cross–appeals as to the amount of damages; (3) NBBJ cross–appeals as to WSU's right to indemnity and also as to computation of damages; and (4) Christiansen cross–appeals as to WSU's right to indemnity and as to the computation of damages. Because of our disposition of the issue regarding liability, resolution of the three cross appeals is unnecessary.

Detweiler first argues that article 17 should be construed so as not to foreclose its claim for delay–caused damages and second, regardless of the construction of the article, it should not be enforced due to public policy considerations.

Article 17 provides that, in no event, shall "any delays or extensions of time be construed as cause or justification for payment of extra compensation to the Contractor." Detweiler urges the court to construe the term "compensation" so as not to include damages. Given this construction, Detweiler then could claim recovery for its damages under article 30.

This contention does not appreciate the well established definitions of compensation which include damages.

Black's Law Dictionary 354 (4th ed. 1968), defines "compensation" as, among other things, "payment of damages", while "damages" at page 466 is defined as "Compensation for the loss or injury suffered." We have previously dealt with the terms as synonymous (*see McFerran v. Heroux,* 44 Wn.2d 631, 642, 269 P.2d 815 (1954)), and hold that damages are included within the term "compensation" as it appears in article 17.

Detweiler next argues the "no–damages–for–delay" clause should not be interpreted to exclude recovery for delays which were the result of owner "obstruction". It cites cases from various jurisdictions which declined to preclude recovery for delays caused by (1) fraud or active interference by the owner; (2) unreasonably extended delays; (3) delays not within those specifically enumerated in the contract; or (4) those not contemplated by the contracting parties. Detweiler urges this court to create an exception where the delays are due to owner "obstruction".

The trial court did not specifically hold that WSU "obstructed" Detweiler's performance. In finding of fact No. 31, the trial court stated:

> The causes and types of the delay to Detweiler's work performance were: architectural design errors, the time other contractors took to perform change order work, acts of CBI and Permalab, weather, and lack of job coordination which Detweiler had right to expect from either WSU and/or its agents or the architect NBBJ. *Such factors in combination obstructed and delayed Detweiler* in the performance of its work and caused Detweiler's increased cost of performance of $227,753.

(Italics ours.)

While the above–cited factors combined to obstruct the performance, the trial court went on to specify in finding of fact No. 37:

> WSU did not actively interfere in the performance of Detweiler's work. The plans and specifications with change orders were adequate for Detweiler to construct their work essentially as designed.

Active owner interference may in some circumstances be of such a nature as to be outside the contemplation of the parties and thus to transcend a no–damage–for–delay clause ( *see, e.g., Seattle v. Dyad Constr., Inc.,* 17 Wn. App. 501, 565 P.2d 423 (1977)), but there is no finding that such was the circumstance in this case.

We affirm the trial court's finding that the delays which occurred were contemplated by the contracting parties and its ruling that recovery for damages is precluded by article 17. *See Nelse Mortensen & Co. v. Group Health Cooperative,* 17 Wn. App. 703, 566 P.2d 560 (1977) and at 90 Wn.2d 843, 586 P.2d 469 (1978).

Detweiler next urges this court to declare "no–damages–for–delay" clauses void and unenforceable because they violate public policy. Five violations of public policy are cited to this court: (1) they may fail of their essential purpose; (2) they may be unconscionable; (3) they may allow public agencies to contract away their negligence; (4) they are bid inflators; and (5) they are against legislative intent.

The first argument in effect asks the court to extend the Uniform Commercial Code and particularly RCW 62A.2–719(2) to construction contracts. However, by its express terms RCW 62A.2 applies only to transactions in goods and thus does not apply to the contract in question. RCW 62A.2–102. Further, RCW 62A.2–719(2) provides that other remedies under the Uniform Commercial Code apply if the remedy in question fails of its essential purpose. Therefore, adoption of RCW 62A.2–719 as to construction contracts necessarily adopts numerous code provisions dealing with remedies. This is a task for the legislative branch of government. We find no evidence of any legislative intent to apply the provisions of RCW 62A.2 to construction contracts.

Detweiler next argues article 17 of the contract is unconscionable. The doctrine of unconscionability involves scrutiny of all of the circumstances surrounding the transaction in question. In *Schroeder v. Fageol Motors, Inc.,* 86

Wn.2d 256, 544 P.2d 20 (1975), we noted two forms of unconscionability. We said:

> Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4–2, at 117 (1972). In *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C. Cir. 1965), the court pronounced that procedural unconscionability was best described as a lack of "meaningful choice." In discussing the various factors to be considered in determining whether a meaningful choice is present, the court noted that consideration must be given to "all the circumstances surrounding the transaction," including "[t]he manner in which the contract was entered," whether each party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print . . ." *Williams v. Walker–Thomas Furniture Co., supra* at 449; *Reynolds v. Preferred Mut. Ins. Co.,* 11 U.C.C. Reporting Serv. 701 (Mass. App. 1972). It is readily apparent that both "conspicuousness" and "negotiations" are factors, albeit not conclusive, which are certainly relevant when determining the issue of conscionability in light of *all the surrounding circumstances.*

*Schroeder,* at 260.

A review of the record before us does not lead to a conclusion that the term in question is unconscionable. Detweiler had notice of the article prior to its submission of a bid on the project. It had opportunity at that time to make provision for the term by adjusting its bid accordingly. WSU bargained for the protection afforded it in article 17 and it would be unfair to now deprive it of the benefit of that bargain. It is not unconscionable to require that article 17 be enforced.

Detweiler's third argument that "no–damages–for–delay" clauses allow the state to contract away liability for its own

negligence is inapplicable inasmuch as no evidence of negligence on behalf of WSU was proven at trial, nor is there any finding of negligence by the trial court.

Fourth, Detweiler argues the article violates public policy inasmuch as it tends to inflate bids. Assuming for the sake of argument that such articles do tend to raise the amount of a contractor's bid, it does not follow that such articles should be unenforceable. In a construction project of the magnitude of the WSU structure, some delays are inevitable. Costs attributable to such delays must be borne by either the owner or the contractor. By allowing the owner to preclude damages at the outset, the contractor may raise the price of his bid so as to take into account delay costs. By this method, the owner is able to know more accurately the total cost of a building at the outset and does not have to worry about "hidden costs" in the form of damages which do not arise until the project is substantially under way. The constituents of a municipality or of the state will also know the costs of a particular project prior to embarking on the construction. The contractor is protected because it knows in advance of bidding that it cannot recover for damages associated with delay and will bid accordingly. Thus, while the argument of Detweiler as to inflated bids arguably may be correct, it is outweighed by more forceful considerations of public policy.

Finally, Detweiler argues enforcement of the article violates public policy as expressed in RCW 4.24.115. That statute voids contractual provisions "purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee". This section is inapplicable inasmuch as there was no proof of negligence by plaintiff nor a proof of property damage against which the defendant was indemnified.

In summation, we conclude enforcement of article 17 of the contract in question does not violate public policy of this state.

The trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.