406 P.2d 306

P. E. ASHTON COMPANY, Plaintiff,

v.

Russell J. JOYNER, Defendant,Third-Party Plaintiff and Appellant,

v.

UNITED PACIFIC INSURANCE COM-PANY, Third-Party Defendant and Respondent.

No. 10254.

Supreme Court of Utah.

Oct. 1, 1965.

4. Ibid.

Howard & Lewis, Jackson B. Howard, Provo, for appellant.

Raymond M. Berry, Salt Lake City, for respondent.

CALLISTER, Justice:

Third party plaintiff, Joyner, appeals from a judgment holding that United Pacific Insurance Company, third party defendant, was not liable under the insurance policy for damages to Joyner's truck.

Joyner, the owner of a pickup truck, purchased insurance which included coverage for "theft" of his vehicle. The policy also contained an exclusionary rider which specified that no insurance is afforded the named insured, while any vehicle covered by the policy is being operated, maintained or used by or under the control of any driver under the age of 25 other than Rosalee Joyner, appellant's daughter

About September 10, 1962, while appellant and his wife were out of town, their 13 year old son, Jimmy, without permission or authority, took the keys to the truck from their home and gave them to his 15 year old friend, David Martin, who backed the truck out of the driveway. David drove the truck several blocks with Jimmy as a passenger. Later, Jimmy assumed control of the truck and drove about Provo and then proceeded towards the boat harbor. During this time he lost control and had an accident. Joyner sustained damages to his truck in the amount of $1,121.44. The evidence established that Jimmy had never had permission to operate a motor vehicle; in fact, he did not even know how to back out of a driveway. Furthermore, his passengers knew he lacked authority to use the truck.

P. E. Ashton, the plaintiff in this action, performed the repair work on the truck. Initially, Mr. Kind, a claims adjuster, wrote to Joyner that the damage was covered under the insurance policy. Subsequently, the claims manager of the company discovered the exclusionary rider and denied reimbursement for the repairs. P. E. Ashton Company sued Joyner to recover payment for the repair work, and Joyner interpleaded his insurance carrier.

The insurance company has asserted the exclusionary rider to sustain its nonliability for the damages incurred by Joyner, and has contended that the sole pertinent question was whether Jimmy Joyner was under 25 years of age, and since this fact has been admitted, there was no basis for appellant's recovery. The appellant contends that under the circumstances of this case his loss

was covered under the theft provision of his policy, and that the exclusionary rider was not applicable. There is no contention that Jimmy intended to deprive the owner permanently of the use of his vehicle; therefore, appellant's recovery is dependent on the meaning of the term "theft" in his insurance contract.

It must be conceded that the numerical majority of jurisdictions hold that the word "theft" in an automobile insurance policy is synonymous with larceny and deny recovery unless the technical elements of the crime of larceny are established

The minority view, which finds support in some recent decisions, applies a stricter rule against insurance companies on the "theft" provisions of their policies and has refused to require proof that the taker intended permanently to deprive the insured of his automobile.[1] The reasoning supporting the minority view is far more persuasive and comports with the doctrine that contracts of insurance should be liberally construed in favor of the insured.

In National Fire Insurance Co. of Hartford v. Slayden,[2] the Mississippi Supreme Court stated:

While there is much authority elsewhere to the contrary, we hold that the term "theft" * * * should not be confined to technical or legalistic construction. It is a broader term than "larceny" and should be given the common and ordinary meaning according to the understanding of persons in the ordinary walks of life. Some consideration should be given to the purposes and reasonable expectations of an ordinary business man when making such a contract.

Where a machine or vehicle is insured against theft, without words defining the term "theft," and some unauthorized person unlawfully takes possession of such vehicle or machine for use by the unlawful taker for so long as he sees fit, and the vehicle or machine is damaged, the loss is covered by the policy and the insurer is liable therefor.[3]

■ This court is committed to the policy that, in case of ambiguity, uncertainty, or doubt, the terms of an insurance contract will be construed strictly against the insurer and in favor of the insured, and that the insured is entitled to the broadest pro-

1. 6 Blashfield, Cyclopedia of Automobile Law & Prac., § 3711, p. 311; 48 A.L.R. 2d pp. 44–47.
2. 227 Miss. 285, 85 So.2d 916 (1956).

3. See also, Pennsylvania Indem. Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 133 A.L.R. 914 (1941); Toms v. Hartford Ins. Co. of Hartford, Conn., 146 Ohio St. 39, 63 N.E.2d 909 (1945); Employers' Fire Ins. Co. v. Bartee, 87 Colo. 147, 285 P. 756 (1930).

tection that he could reasonably believe the commonly understood meaning of its terms afforded him.[4]

In view of the foregoing policy, it seems more logical and equitable that this court interpret the term "theft," as used in the instant policy of insurance, as including the wilful taking or appropriation of one person's property by another, wrongfully and without justification, with the design to hold or make use of such property in violation of the rights of the owner.[5]

That this court should adopt such a rule is further supported by 41–1–109, U.C. A.1953,[6] which makes it a misdemeanor for any person to drive a vehicle not his own, without the consent of the owner, with intent temporarily to deprive the owner of his possession and without intent to steal. This statute is contained within Article 9, Special Anti-theft Laws, of our Motor Vehicle Act. It would seen incongruous for this court to restrict the meaning of "theft" within an insurance policy, which should be liberally construed, to a situation where the taker had an intent to steal and to deprive the owner permanently of his possession, when our legislature has eliminated these elements in an anti-theft statute.

Mention should be made of the exclusionary rider relating to the operation or use of the vehicles covered by any person under the age of 25 years. This rider would apply only in those instances where the person under that age has permission or authority to use the vehicle.

The other issue presented by the parties is without merit. The judgment of the trial court is reversed with costs awarded to the appellant.

CROCKETT and WADE, JJ., concur.

HENRIOD, C. J., concurs in the result.

McDONOUGH, Justice, dissents.

4. Jorgensen v. Hartford Fire Ins. Co., 13 Utah 2d 303, 373 P.2d 580 (1963); Stout v. Washington Fire & Marine Ins. Co., 14 Utah 2d 414, 385 P.2d 608 (1963); concurring opinion of Wolfe, J., Handley v. Mutual Life Ins. Co., 106 Utah 184, 147 P.2d 319, 152 A.L.R. 1278.

5. A strict interpretation of the term "theft" renders the insurance provision practically meaningless in that it would afford protection to the insured in only rare instances. See Baker v. Continental Ins. Co., 155 Kan. 26, 122 P.2d 710 (1942).

6. Commonly referred to as the "joy-riding statute."