**MACHINERY CENTER, INC. and the Continental Bank and Trust Company, Plaintiffs-Appellants,**

v.

**ANCHOR NATIONAL LIFE INSUR-ANCE COMPANY, Defendant-Appellee.**

No. 130–70.

United States Court of Appeals, Tenth Circuit.

Nov. 24, 1970.

1

Warren Patten, Salt Lake City, Utah (Albert J. Colton, and Fabian & Clen-denin, Salt Lake City, Utah, on the brief), for plaintiffs-appellants.

Richard W. Giauque, Salt Lake City, Utah (James R. Amschler, and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief) for defendant-appellee.

Before BREITENSTEIN, Senior Circuit Judge, SETH, Circuit Judge, and TEMPLAR, District Judge.

TEMPLAR, District Judge.

This case involves an interpretation of a conditional premium receipt issued by the defendant-appellee, Anchor National Life Insurance Company, at the time an application for an insurance policy was submitted to it on the life of Roger V. Pierce. The trial court sustained defendant's motion for summary judgment and the plaintiffs, Machinery Center, Inc. and The Continental Bank and Trust Company, appealed.

Roger V. Pierce had been for a number of years and was in the spring of 1968 the president of appellant Machinery Center, Inc. In order to meet requirements for a Small Business Administration insured loan to Machinery Center, Inc., from appellant Continental Bank and Trust Company, Pierce applied to appellee for life insurance and on April 29, 1968, Pierce completed an application to it for $60,000, declining term insurance. The primary beneficiary named was appellant Continental Bank and Trust Company, and appellant Machinery Center, Inc., was named as the contingent beneficiary and owner of the policy. On the same day, Machinery Center paid by check the first year's premium in the amount of $819.40, and was issued by appellee a conditional premium receipt. The check for the premium was cashed by Anchor during the lifetime of Pierce.

The pertinent part of the conditions of the application, Part I, reads as follows:

"IT IS AGREED: * * * (2) that no insurance shall be considered in ef-

fect under this application (except as may be provided in the conditional premium receipt bearing the same date as this application) unless and until the application is approved and accepted by the Company at its Home Office and the policy manually delivered to and accepted by the Proposed Insured (or the Owner, if other than the Proposed Insured) during the lifetime and continued insurability of each person proposed for insurance and the first premium thereon has been paid in full. * * *" 1

Pierce was examined on April 29, 1968, by a physician chosen by appellee and the physician rated the proposed insured as a "good" risk. Pierce died on June 10, 1968, at which time appellee Anchor had not made a decision to accept the application of Pierce, and the record indicates that at the time of Pierce's death the underwriting investigation had not been completed because parts of the medical and other information on Pierce requested by appellee had not been received by it. At no time did appellee Anchor ever deliver any policy of insurance to Pierce or to either of the appellants. The appellee tendered the return of premium in the amount of $819.40 to appellant Machinery Center, but this tender was refused.

Appellee refused payment of the principal amount of the insurance applied for on the grounds that it had made no decision to accept the application before applicant's death and no policy was delivered during his lifetime. This action was thereafter instituted to recover under the terms of the conditional premium receipt the amount of insurance applied for.

In granting appellee's motion for summary judgment, the trial court held:

" * * * that at the date of death of Robert V. Pierce ('applicant'), defendant had not completed its underwriting investigation, that defendant had not at that date determined or satisfied itself that the applicant was insurable or entitled to the insurance applied for, and that therefore under the terms of the Application and Conditional Premium Receipt involved, there was no insurance policy or contract of insurance in force or effect; that there is no geniune [sic] issue as to any material fact and that the said defendant is entitled to judgment in its favor as a matter of law, * * *"

The issue presented to this Court is whether or not the trial court was correct in holding that as a matter of law, appellee Anchor was entitled to summa-

---

1. The document entitled "Conditional Premium Receipt" provides in pertinent part as follows:

"Received from Roger V. Pierce (Machinery Center, Inc.) $819.40 on account of application for insurance made this date to ANCHOR NATIONAL LIFE INSURANCE CO.—Los Angeles, Calif. If this sum is equal to the full first premium for the mode selected on the policy applied for and if after investigation and medical examination (if required) the Company shall be satisfied that on the date of the application or such medical examination, whichever is later, each person proposed for insurance was insurable and entitled under the Company's rules and standards to insurance on the plan and for the amount and at the rate of premium applied for, the insurance protection applied for shall by reason of such payment take effect from the date of the application or such medical examination or the date specifically requested in the application, whichever is later; but in no event shall the Company's total liability because of this application and because of other policies in force in the Company on the life of the proposed insured, prior to actual issuance and delivery of the policy exceed four times its maximum retention for its own account for the policy applied for but in no event more than $100,000. If the sum paid is less than the full first premium or if the Company is not so satisfied, no insurance shall be considered in effect unless and until the application is approved and accepted by the Company and the policy manually delivered to and accepted by the Proposed Insured, or Owner, during the lifetime and continued insurability of each person proposed for insurance and the first premium thereon paid in full."

**4**

ry judgment under the facts and circumstances of this case.

On appeal, the appellants contend that Utah law applies; that their rights are defined by the receipt issued by appellee, not by the application; that the premium receipt is an insurability type receipt; that under an insurability type receipt the insurer is bound if the applicant was insurable, objectively determined; that Utah's hostility to insurers' attempts to hide behind ambiguous receipts is evident; that there is a genuine issue of fact—was Pierce insurable; that a contract was in force between the parties; that actual "satisfaction" need not be shown; that neither Mofrad[2] nor Killpack[3] are governing; that the language, "if the company is not so satisfied," does not convert an insurability receipt into an approval receipt; and that the record does not support appellee's assertion that it was not satisfied that Pierce was insurable. The appellee contends that the trial court was correct in holding that the plain terms of the application and conditional premium receipt controlled the obligations of the parties and that the application and conditional premium receipt in question clearly set forth at least two pre-conditions to the effectiveness of the policy which were not fulfilled. Appellee relies solely on two cases decided by this Circuit.[2], [3]

Appellants are correct in their contention that the law of the State of Utah governs since this is a diversity case and the Court must follow the substantive law as declared by the Utah courts.[4] In this case the law of Utah is to the effect that Utah law governs the rights and obligations of the parties to a contract if the contract was made in Utah.[5] This contention that the law of Utah applies has not been questioned or controverted by the appellee and it will be assumed by this Court, for the purposes of this appeal, that Utah law does govern the rights and obligations of the parties in this controversy.

■■ A binding receipt and the application for insurance are to be considered and construed together [6] and there is no reason why this rule should not apply to a conditional premium receipt. Since the applicant, Pierce, signed the application, it must be presumed that he read the agreement and was aware of its contents.[7]

■ In the interpretation of binding receipts, the intention of the parties should be the controlling factor. This intention is the mutual intention of the parties and not the intention of only one of them, unless the other party was aware of the intention and understanding of the one and allowed him to contract without advising him of another interpretation.[8]

■ ■ Although Utah follows the rule of law that in interpreting insurance contracts any doubts, uncertainties, or ambiguities used in the contract will be strictly construed against the insurer and in favor of the insured,[9] this rule is not applicable unless there is some genuine ambiguity or uncertainty in the language upon which reasonable minds

2. Mofrad v. New York Life Insurance Company, 206 F.2d 491 (10th Cir.).

3. Killpack v. National Old Line Insurance Company, 229 F.2d 851 (10th Cir.).

4. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Company v. Stentor Company, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

5. Gressler v. New York Life Insurance Company, 108 Utah 173, 156 P.2d 212, modified on other grounds on rehearing 108 Utah 182, 163 P.2d 324.

6. 43 Am.Jur.2d, Insurance, § 219, p. 280.

7. Mofrad v. New York Life Insurance Company, supra; 16A Appleman Insurance Law and Practice, § 9143, p. 431.

8. Prince v. Western Empire Life Insurance Company, 19 Utah 2d 174, 428 P.2d 163, 165, 166.

9. Christensen v. Farmers Insurance Exchange, 21 Utah 2d 194, 443 P.2d 385; P. E. Ashton Company v. Joyner, 17 Utah 2d 162, 163, 406 P.2d 306.

might differ.[10]  In a case where the parties' intentions are clear from an examination of the documents, the Court will not rewrite the contract.[11]  In the present case the language of the application and the conditional premium receipt is clear and free from doubt; neither document is ambiguous.  In Mofrad this Court stated at 206 F.2d page 494:

> " 'It was within the rights of, and was competent for, the parties to provide in the application under what conditions and at what time the policy should become effective and binding.' Jones v. New York Life Ins. Co., 1927, 69 Utah 172, 253 P. 200, 202."

There are, generally speaking, two types of conditional receipts which are, the "approval" type receipt which makes the insurance company's obligation conditional upon acceptance and approval by the company, and the "insurability" type receipt which conditions the insurance company's obligation on the company's satisfaction of the applicant's insurability as of the time of the application or medical examination.  In the case at bar, the Court concludes, as did the trial judge below under the Utah law, that the conditional premium receipt in question is an "approval" type receipt.

Reading in pertinent part the application and the conditional premium receipt, the Court concludes that the receipt governs the rights and obligations of the parties in this case.  The receipt contains certain conditions precedent which had to be complied with before any insurance became effective.  The effect of the language contained in the receipt is that if appellee Anchor had not determined and satisfied itself, after investigation and medical examination, that the proposed insured, Pierce, was insurable, then no insurance was in effect until Anchor approved and accepted the application and manually delivered the policy to the proposed insured or owner during the lifetime and continued insurability of the proposed insured. The record reflects that at the time of the proposed insured's death the appellee had not completed its underwriting investigation and appellee had not satisfied itself that the proposed insured was insurable or entitled to insurance.  The conditions set forth in the premium receipt not having been met, no contract of insurance, either temporary or in the form of a final policy, was in force at the time of the proposed insured's death.

This Court has previously held that a fair, understandable condition precedent or prerequisite to liability is not objectionable.[12]  Prior to this case, we have had the occasion to review two decisions handed down by the Federal District Court for the District of Utah regarding insurance applications and receipts.  One of the cases is Mofrad v. New York Life Insurance Company, supra, in which this Court affirmed a directed verdict for the insurance company.  At page 493 of that decision, we stated:

> "And there are no provisions in the agreement which would lead to a conclusion that an interim contract was intended by the parties.  There are other clearly prescribed conditions within the agreement than the payment of the premium and delivery of the receipt to the applicant, which lead only to the conclusion that the applicant was merely applying for a contract of insurance which could be consummated only upon the fulfillment of the conditions set out in the application.  And where a policy application contains such conditions precedent, performance thereof is a prerequisite to the taking effect of insurance coverage. [citation omitted.]"

10.  Auto Lease Company v. Central Mutual Insurance Company, 7 Utah 2d 336, 325 P.2d 264.

11.  Mofrad v. New York Life Insurance Company, supra.

12.  Cliborn v. Lincoln National Life Insurance Company, 332 F.2d 645.

In the other case, Killpack v. National Old Line Insurance Company, supra, this Court affirmed the trial court's granting of the insurance company's motion for summary judgment. In Killpack, approval was required by both the application and the binding receipt, and the application of the applicant had not been approved at the time of his death, and, therefore, there was no contract of insurance in existence.

We have reviewed the cases cited to us by diligent counsel for the parties to this appeal. We are unable to say after doing so that under Utah state law, the interpretation made by the trial court of the provisions of the application and the conditional receipt before us was clearly erroneous.

One of the cases cited by appellants to the trial court and to this Court, Prince v. Western Empire Life Insurance Company, supra, deserves comment since it was recently decided by the Utah Supreme Court and involves the question of the effectiveness of binding receipts. In that case the binding receipt was worded differently than the one now under consideration in this Court, and in the Prince case the court discussed " * * * some elements of the theories of 'constructive ambiguity,' unconscionability, and detrimental reliance."[13] The theory of detrimental reliance was clearly present in Prince because there the applicant was seeking to replace a large sum of insurance on his life.

Furthermore, in Prince, the receipt issued to the applicant was labeled a "binding receipt," not a "conditional premium receipt," as here. The receipt in Prince did not contain a provision that "no insurance shall be considered in effect unless and until the application is accepted and approved by the company and the policy manually delivered to and accepted by the proposed insured, or owner, during the lifetime and the con-

tinued insurability" of the person proposed for insurance.

It is indeed unfortunate for appellants that the underwriting investigation being conducted by defendant had not been completed so that a determination could have been made by it as to the acceptability of Pierce as a risk to be insured, but the application was not approved nor the policy delivered and we are not at liberty to ignore the plain provisions of the contract entered into by the parties.

The rule followed by this Circuit in regard to motions for summary judgment is clear and while it is the duty of the trial court to grant a motion for summary judgment in an appropriate case, the relief contemplated by Rule 56 is drastic, and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes. Under the rule no margin exists for the disposition of the factual issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits. The pleadings are to be construed liberally in favor of the party against whom the motion is made, but the court may pierce the pleadings, and determine from the depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist. If, after such scrutiny, any issue as to a material fact dispositive of right or duty remains the case is not ripe for disposition by summary judgment, and the parties are entitled to a trial.[14]

In the present case neither the application nor the conditional premium receipt, considered separately or together, permits a determination that insurance was in force and effect between the parties to this controversy or between appellee Anchor and the proposed insured Pierce. Under the facts and cir-

13. Note, Life Insurance Policies and "Binding" Receipts: Is the Insurer Bound?—1968 Utah Law Review 448, 449.

14. Bushman Construction Company v. Conner, 307 F.2d 888, 893.

cumstances of this case, no insurance was in existence at the time of the proposed insured's death, and the other issues raised by the appellants on this appeal are irrelevant and immaterial and need not be considered by this Court. Since it is apparent to this Court that there was no issue of material fact remaining before the trial court which could change the outcome of the case, the granting of appellee's motion for summary judgment was appropriate. The trial judge did not erroneously interpret or ignore the applicable state law of Utah, and this Court adheres to the rule that it will accept a federal trial judge's interpretation of state law unless convinced that such interpretation is clearly erroneous.[15]

The judgment of the trial court is therefore

Affirmed.

15. Parsons v. Amerada Hess Corporation, 422 F.2d 610; Bartch v. United States, 330 F.2d 466.