*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BASIC RESEARCH, LLC, DYNAKOR PHARMACAL, LLC,
THE CARTER-REED COMPANY, LLC, ZOLLER LABORATORIES, LLC,
DENNIS GAY, DANIEL B. MOWREY, and MITCHELL K. FRIEDLANDER,
*Plaintiffs and Appellants*,
*v.*
ADMIRAL INSURANCE COMPANY, a Delaware Corporation,
*Defendant and Appellee.*

No. 20110556
Filed February 8, 2013

Third District, Salt Lake
Honorable L. A. Dever
No. 110901154

Attorneys:

Alan C. Bradshaw, Aaron C. Garret, David A. Gauntlett,
Andrew M. Sussman, Salt Lake City, for appellants

Phillip S. Ferguson, Rebecca L. Hill, David J. Garthe,
Salt Lake City, for appellee

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1     Basic Research, LLC, along with related corporations and officers thereof (Basic Research), appeals the district court's grant of summary judgment in favor of Admiral Insurance (Admiral). Basic Research argues that in finding that Admiral had no duty to defend it against the underlying claims, the district court interpreted provisions of Basic Research's insurance policy too narrowly. We affirm.

## BACKGROUND

¶2     Basic Research is a limited liability company organized and existing under the laws of Utah. Its principal place of business is located in Salt Lake City, Utah. Basic Research markets the weight-loss product Akävar, using the slogans "Eat All You Want And Still Lose Weight" and "And we couldn't say it in print if it wasn't true!"

(the slogans).[1] Customers who purchased Akävar filed lawsuits in multiple federal and state jurisdictions, all claiming false advertising, defective product, and/or failure to perform as promised (the underlying claims).

¶3 Basic Research was insured by Admiral under two consecutive Commercial General Liability insurance policies (the Policy). A portion of the Policy provided coverage for "Personal and Advertising Injury," defined relevant terms, and contained a list of types of claims specifically excluded from coverage. After the underlying claims were filed, Basic Research invoked its coverage and asked Admiral to defend it. Admiral refused to defend on the premise that the underlying claims were not covered by the terms of the Policy.

¶4 Basic Research sued Admiral for declaratory relief. Both parties filed motions for summary judgment. The district court denied Basic Research's motion for summary judgment and granted Admiral's, finding that the underlying claims were not covered by the terms of the Policy and were in fact specifically excluded. Basic Research timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶5 Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539. "When the existence of a contract and the identity of the parties are not in issue and when the contract provisions are clear and complete, the meaning of the contract can appropriately be resolved by the court on summary judgment." *Morris v. Mountain States Tel. & Tel. Co.*, 658 P.2d 1199, 1201 (Utah 1983). Furthermore, the interpretation of a contract is a question of law that is reviewed for correctness, giving no deference to the district court. *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 14, 133 P.3d 428.

---

[1] At some point during the pendency of the underlying lawsuits, these slogans were trademarked by a company named Western Holdings. Basic Research appears to have licensed the use of these slogans from Western Holdings. *See infra* ¶ 14.

## ANALYSIS

¶6 Basic Research argues that the district court interpreted the Policy terms too narrowly in concluding that the underlying offenses were not indemnified. For the following reasons, we agree with the district court that the underlying claims are not covered by the Policy. In fact, claims of this type are specifically excluded. Therefore, Admiral did not have a duty to defend Basic Research.

¶7 In Utah, an insurer has a duty to defend "when the insurer ascertains facts giving rise to potential liability under the insurance policy." *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997). Where the allegations, if proved, show "there is no potential liability [under the policy], there is no duty to defend." *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986). The question of whether there is potential liability under the policy "is determined by comparing the language of the insurance policy with the allegations of the complaint." *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 16, 140 P.3d 1210 (internal quotation marks omitted). "The question is whether the allegations, if proved, could result in liability under the policy." *Deseret*, 714 P.2d at 1147. "If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete." *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 18, 266 P.3d 733. When interpreting a contract, a court looks "within the four corners of the contract to determine the parties' intentions, which are controlling." *Innerlight, Inc. v. Matrix Group, LLC,* 2009 UT 31, ¶ 14, 214 P.3d 854 (internal quotation marks omitted).

¶8 The relevant portions of the Policy provide:

Coverage B—Personal and Advertising Injury Liability

Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for personal and advertising injury to which this insurance does not apply. We may, at our discretion, investigate

any offense and settle any claim or "suit" that may result . . . .

Section VI—definitions: "Personal and advertising injury" means injury, including consequential "bodily injury," *arising out of* one or more of the following offenses: . . .

f. The use of another's advertising idea in your "advertisement."

(Emphasis added.)

¶9 Admiral argues that the phrase "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" must be understood to limit its duty to defend to liability incurred *as a result of* "personal and advertising injury." We agree.

¶10 Basic Research argues that the causes of action pled in the underlying claims fall within the Policy's definition of "personal and advertising injury," and specifically that the claims stem from "the use of another's advertising idea." Accordingly, Basic Research asks the court to require indemnification against claims of "personal and advertising injury" where the claim has some factual connection with Basic Research's "use of another's advertising idea" in its advertisement. In so doing, Basic Research ignores the definition of "personal and advertising injury" within the context of the coverage provision, creating ambiguity where there is none. "[A] contract term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests." *Equitable Life & Cas. Ins. Co. v. Ross,* 849 P.2d 1187, 1192 (Utah Ct. App. 1993).

¶11 It is true that "personal and advertising injury" may factually arise out of the "use of another's advertising idea." But in order to trigger Admiral's duty to defend, the underlying claims must allege "personal and advertising injury" that occurred *as a result of* the "use of another's advertising idea." That connection is lacking in the present case. Although the underlying claims asserted that Basic Research used the slogans "Eat All You Want And Still Lose Weight" and "And we couldn't say it in print if it wasn't true!," the underlying causes of actions were in no way dependent on the source or ownership of those slogans. In fact, if the underlying claims were to go to trial, the plaintiffs would never be required to prove the original source of the slogans. They would need to prove only that Basic Research used the slogans to market a defective product.

¶12    None of the plaintiffs alleges injury "as a result of" Basic Research's having misappropriated or otherwise wrongfully used the advertising slogan of "another[]." Indeed, allowing Basic Research to invoke the Policy based on underlying claims of this sort would require indemnification where there is *any* but-for causal link between the "use of another's advertising idea" and an underlying plaintiff's damages, no matter how legally irrelevant the link. "In interpreting a contract, the intentions of the parties are controlling." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599. To so interpret the Policy would expand the scope of the contractual terms beyond their plain meaning and the parties' original intentions. Where the alleged damages do not legally "aris[e] out of" the policyholder's "use of another's advertising idea," the underlying claims do not obligate the insurer to indemnify.

¶13    Basic Research presents voluminous authority suggesting that courts must broadly interpret the word "use" within the phrase "use of another's advertising idea." Specifically, Basic Research asserts that the phrase "use of another's advertising idea in your advertisement" should not be limited to claims of misappropriation or wrongful taking of another's advertising idea, but should rather include any form of "misuse," including deceitful advertising. Such an interpretation may be appropriate where the underlying injury is directly caused by the deceitful advertising, regardless of the product's failure to perform.[2] However, in the instant case the "use" of the slogans is not the wrongdoing from which the underlying plaintiffs are claiming injury. Rather, they claim damages due to the allegedly false nature of those slogans and the resulting inducement to buy a defective product.

¶14    Moreover, in the present case Basic Research appears to have had a license to use these slogans. *See supra* ¶ 2 n.1. If we were to interpret the coverage terms as Basic Research requests, parties insured under this type of language would be able to indemnify

---

[2] If applied to the Policy in this case, however, this interpretation might conflict with exclusion G. *See infra* ¶ 16. Further, the authorities provided by Basic Research treat claims of direct injury arising from a party's lack of entitlement to use an advertising idea. *See, e.g.*, *Atlapac Trading Co., Inc. v. Am. Motorists Ins. Co.*, 1997 WL 1941512, at *1 (C.D. Cal. Sept. 19, 1997) (olive oil distributor asserting insurance company's duty to defend where underlying suit brought by rival distributor claiming direct injuries resulting from unfair competition was premised on improper use of slogan "pure olive oil").

themselves from all defective product liability by simply limiting their advertising, however false or deceptive, to the use of slogans and materials owned by other entities. Here, the slogans' registered owner, Western Holdings, has not suggested any sort of abuse. The terms of the Policy might well obligate Admiral to indemnify Basic Research against a claim by Western Holdings related to Basic Research's use of the slogans, but that is not the case before us.

¶15    Basic Research has attempted to re-characterize the underlying claims, asserting that they do "not allege injury from the class members' failure to lose weight, but from their purchase of the product caused by the advertising." To support its characterization, Basic Research references an order in one of the underlying claims approving a class notification program directed at "[p]ersons who purchased Akävar after seeing or hearing the marketing slogan 'Eat all you want and still lose weight' during the relevant damages period," without specifying whether the members of the proposed class had ever actually used the product. *Miller v. Basic Research, LLC,* 2011 WL 818150, at *2 (D. Utah Mar. 2, 2011). However, this characterization fails. A claim of injury resulting from reliance on the slogans ultimately depends on whether those slogans were true or not. Indeed, at oral argument Basic Research conceded "what is alleged [in the class certification] is simply that the product is advertised in a way that it cannot possibly perform." Again, the underlying claims do not depend on whether Basic Research owned or was otherwise entitled to use the slogans, but on whether the slogans constitute false advertising. The underlying claims do not "aris[e] out of" Basic Research's "use of another's advertising idea" in the sense required for coverage under the Policy.

¶16    Finally, even if the Policy's terms could conceivably be construed to encompass the underlying claims, each of the underlying claims is premised on Akävar's failure to perform as advertised. Such claims are explicitly subject to exclusion G of the Policy, which provides:

> Exclusions
>
> This insurance does not apply to: . . .
>
> g. Quality or performance of goods — failure to
> conform to statements "Personal and advertising injury" arising out of the failure of goods, products or
services to conform with any statement of quality or performance made in your "advertisement."

The underlying claims assert injury and damages resulting from Akävar's failure to live up to the promises of quality and performance expressed by the slogans.

## CONCLUSION

¶17    After comparing the language of the Policy with the allegations in the underlying claims, we conclude that the claims asserted are not covered by the Policy, and are in fact squarely excluded by its terms. Admiral therefore has no duty to defend Basic Research. The district court is affirmed.