2014 UT App 19

**Q–2, LLC, Plaintiff and Appellee,**

v.

**Wayne L. HUGHES Sr. and Patricia L. Hampton–Hughes, Defendants and Appellants.**

**No. 20120607–CA.**

Court of Appeals of Utah.

Jan. 24, 2014.

John M. Webster, Matthew A. Bartlett, and Brian J. Porter, for Appellants.

David J. Shaffer, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored the lead opinion, in which Judge GREGORY K. ORME and Senior Judge PAMELA T. GREENWOOD concurred.[1] Judge GREGORY K. ORME authored a concurring opinion, in which Senior Judge PAMELA T. GREENWOOD concurred.

CHRISTIANSEN, Judge:

¶ 1 Wayne L. Hughes Sr. and Patricia L. Hampton–Hughes (the Hugheses) challenge the trial court's grant of partial summary judgment to Q–2, LLC on the Hugheses' claim of adverse possession of a disputed parcel of land. We reverse and remand.

## BACKGROUND

¶ 2 This case involves a disputed property boundary between neighboring parcels of land in Syracuse, Utah.[2] The dispute arises from a discrepancy between the recorded

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. On appeal from a bench trial, we recite the facts in a light most favorable to the trial court's findings. *Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 2 n. 1, 310 P.3d 747. However, because the Hugheses challenge the pretrial grant of summary judgment to Q–2 on their adverse possession claim, we recite the facts relevant to that claim in the light most favorable to the Hugheses as the nonmoving party. *See Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 2, 307 P.3d 576.

property lines and a fence line that separated the Hugheses' property from the neighboring parcels to the east from approximately 1927 to 1971. At the time the Hugheses purchased their property in 1998, the fence had deteriorated, and the Hugheses subsequently occupied and used the property up to the record property line.

¶ 3 In 2001, the owner of a parcel adjoining the Hugheses' property brought an action against the Hugheses seeking to quiet title to the property between the record property line and the former fence line on a theory of boundary by acquiescence. *Dahl Inv. Co. v. Hughes,* 2004 UT App 391, ¶ 4, 101 P.3d 830. There, the district court concluded that a boundary by acquiescence had been established by the prior owners' acceptance of the fence line as a boundary from approximately 1925 to 1965, and this court affirmed. *Id.* ¶ 11. In doing so, we rejected the Hugheses' argument that their subsequent non-acquiescence to the fence line as a boundary defeated the plaintiff's claim. *Id.* ¶¶ 10–11.

¶ 4 In late 2008, Q–2, another adjoining landowner, brought the present quiet title action to adjudicate the boundary between the Hugheses' property and its own. While Q–2 was not a party to the *Dahl* litigation, Q–2 alleged that a boundary by acquiescence had been established by the mutual acquiescence of Q–2's and the Hugheses' predecessors-in-interest to the same fence line that was at issue in *Dahl.*[3] The Hugheses filed a counterclaim alleging that notwithstanding Q–2's boundary by acquiescence claim, the Hugheses had adversely possessed the disputed property subsequent to the establishment of the boundary by acquiescence.

¶ 5 Before trial, Q–2 moved for partial summary judgment on the Hugheses' adverse possession claim. Q–2 argued that because the Hugheses believed the disputed property to be their own and because they had not possessed the land for seven years beyond the date when the boundary by acquiescence was adjudicated, the Hugheses could not establish a prima facie claim of adverse possession. The trial court granted

Q–2's motion for partial summary judgment and dismissed the Hugheses' adverse possession claim with prejudice. The case proceeded to trial, and the trial court found that the parties' predecessors-in-interest had mutually acquiesced to a boundary at the old fence line from at least 1927 to 1971. The trial court therefore concluded that Q–2 had successfully proven its claim of boundary by acquiescence, ordered the boundary between the parties' properties established at the location of the old fence line, and quieted title to the disputed property in Q–2.

## ISSUE AND STANDARD OF REVIEW

¶ 6 On appeal, the Hugheses challenge only the trial court's grant of summary judgment to Q–2 on the Hugheses' claim for adverse possession of the disputed property. We review the trial court's grant of summary judgment for correctness. *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600.

## ANALYSIS

¶ 7 The Hugheses concede that the trial court correctly concluded, based on the evidence presented at trial, that Q–2 had established its claim of boundary by acquiescence. Their only contention on appeal is that the trial court erroneously dismissed their claim of adverse possession. The Hugheses argue that legal title to the disputed property passed to Q–2's predecessor-in-interest no later than 1971, when the elements of boundary by acquiescence were established, and that the Hugheses' possession of the property after 1998 was therefore adverse to the legal title as required by statute. Conversely, Q–2 argues that the Hugheses held legal title to the disputed property until the trial court ordered title quieted in Q–2 at the conclusion of trial on its boundary by acquiescence claim and that the Hugheses' possession of the property prior to that time was therefore not adverse to the legal title. Thus, to evaluate the Hugheses' adverse possession claim we must first determine when

**3.** The property owned by Q–2 is bordered to the north and south by the property that was the

subject of the *Dahl* litigation.

legal title to the disputed property passed to Q–2 or its predecessor-in-interest.

## I. Legal Title to the Disputed Property Passed to Q–2's Predecessor–in–Interest at the Time the Elements of Boundary by Acquiescence Were Met.

¶ 8 The Hugheses argue that legal title passed to Q–2's predecessor-in-interest by operation of law once the elements of boundary by acquiescence were met. We agree. A boundary by acquiescence is established when, for a period of at least twenty years, adjacent landowners mutually acquiesce to a visible boundary line and occupy the property up to that line. *See Jacobs v. Hafen*, 917 P.2d 1078, 1080 (Utah 1996). The determination of when, for purposes of adjudicating the rights of later possessors, the legal title to property transfers under the boundary by acquiescence doctrine appears to be an issue of first impression for Utah Courts. However, we find clear guidance in our supreme court's boundary by acquiescence jurisprudence.

¶ 9 In *Brown v. Peterson Development Co.*, 622 P.2d 1175 (Utah 1980), our supreme court considered a factual scenario similar to the one at issue here. The plaintiffs owned a parcel of property abutted to the east by three lots owned by the defendants, and divided from those lots by an old fence line and irrigation ditch. *Id.* at 1176–77. The plaintiffs claimed ownership of all land west of the fence line, despite the fact that some parts of that land were described in the defendants' deeds. *Id.* at 1177. The court concluded that undisputed evidence demonstrated that the parties' predecessors-in-interest had acquiesced to the old fence line as the boundary line between their properties for more than forty years, and had occupied and utilized the property in accordance with that boundary line. *Id.* The court held that the plaintiffs' predecessor-in-interest, Reynold Johnson, had acquired title to the disputed property west of the fence line by operation of law under the boundary by acquiescence doctrine. *Id.* The court observed that the defendants' "legal title to any part of the disputed strip of land had been extinguished when Johnson's occupancy and possession had ripened into a legal title" and that the defendants held only "bare record title to any land west of the old fence that was embraced within the descriptions in their title documents." *Id.* Notably, the court understood this "ripening" of Johnson's legal title to have occurred prior to the conveyance of Johnson's property interest to the plaintiffs and, by extension, prior to the parties' litigation over the boundary. *See id.* at 1178 ("The later quitclaim deeds passed the legal title to [the plaintiffs]."). The court concluded that the "title lost by defendants' predecessors by virtue of the operation of the doctrine of boundary by acquiescence did not revert to the defendants" once the record boundary line was subsequently fixed by survey, but "legal title to the disputed strip remained in Reynold Johnson or his grantee or successor in interest, from whom the plaintiffs received their title." *Id.*

¶ 10 In *RHN Corp. v. Veibell*, 2004 UT 60, 96 P.3d 935, our supreme court considered another boundary by acquiescence claim based on the parties' recognition of a fence line as their property boundary. There, the evidence established that the parties and their predecessors-in-interest had mutually acquiesced in the fence line as their boundary from 1938 until at least 1979, when one of the landowners may have discovered the true boundary line. *Id.* ¶ 30. The defendant argued that this discovery resulted in the landowners' subsequent acquiescence to the record boundary, defeating the claim of boundary by acquiescence. *Id.* ¶ 31. The supreme court disagreed, explaining that the plaintiffs' predecessor-in-interest's "occupancy and possession for a long period of time 'ripened into legal title' long before he discovered the actual location of the record boundary" some twenty years before litigation commenced. *Id.* ¶¶ 9, 30.

¶ 11 In these two cases, the encroaching landowner's possession "ripened into legal title" and extinguished the record owner's legal title at the time such possession satisfied the requirements of the boundary by acquiescence doctrine—years before the boundary was judicially determined. We therefore conclude that once adjacent landowners have acquiesced to a visible boundary

other than the recorded property line for the requisite twenty years, the encroaching landowner's possession "ripen[s] into legal title" by operation of law, extinguishing the other landowner's legal title to any part of the disputed land and leaving the previous owner with only "bare record title." *See Brown*, 622 P.2d at 1177. Thus, a judicial determination of a boundary by acquiescence and quieting of title merely recognizes what has already occurred by operation of law: the transfer of legal title of the disputed land to the occupying landowner.

¶ 12 We recognize that neither *Brown* nor *Veibell* directly addressed the question of when legal title transfers under the boundary by acquiescence doctrine. However, in each case, a recognition that title had transferred by operation of law at the time the elements of the doctrine were met—and before a judicial ruling or order was entered—was essential to the supreme court's disposition of the questions presented. *See Veibell*, 2004 UT 60, ¶ 31, 96 P.3d 935 (concluding that legal title had vested in plaintiffs' predecessor-in-interest long before his discovery of the record boundary and therefore "the operation of the doctrine of boundary by acquiescence is not vitiated by a subsequent discovery of the true record boundary by one of the parties"); *Brown*, 622 P.2d at 1178 (explaining that "[t]he fact that the plaintiff lot buyers had notice of the actual lot boundaries ... would have been fatal to their action if they had not received a conveyance of the legal title to the disputed strip of land" from the encroaching landowner). These cases therefore persuasively demonstrate the principle that legal title transfers at the time the elements of boundary by acquiescence are met.

¶ 13 Applying this principle to the facts before us, we conclude that legal title to the disputed property passed to Q–2's predecessor-in-interest no later than 1971. The trial court found that the fence existed and was treated as the boundary line by the parties' predecessors-in-interest, who occupied and utilized the land up to the fence line from at least 1927 to 1971. The court found that the fence "met all of the elements for boundary by acquiescence between 1927 and 1971." Legal title to the disputed property therefore vested in Q–2's predecessor-in-interest once twenty years had passed under these conditions.

## II. The Trial Court Erred in Granting Summary Judgment to Q–2 on the Hugheses' Adverse Possession Claim.

¶ 14 Having determined that legal title to the disputed property passed to Q–2's predecessor-in-interest no later than 1971, we next consider whether the trial court properly granted summary judgment to Q–2 on the Hugheses' adverse possession claim. "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 5, 297 P.3d 578. In reviewing a grant of summary judgment, we view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 5, 215 P.3d 143.

¶ 15 To establish a claim of adverse possession under color of title, the Hugheses must establish that they held and possessed the property adversely to the legal title for at least seven years prior to commencement of litigation. *See* Utah Code Ann. § 78B–2–208 (LexisNexis 2008). While occupation of real property is generally presumed to be "under and in subordination to the legal title," *id.* property will be "considered to have been adversely held if a person in possession of the property ... possesses a written document purporting to convey title," *id.* § 78B–2–210(1). "In order to establish title by adverse possession, the party claiming adverse possession has the burden of proving that possession was open, notorious, and hostile and that taxes were paid for the entire statutory period." *Marchant v. Park City*, 788 P.2d 520, 523–24 (Utah 1990).

¶ 16 Viewing the undisputed facts in a light most favorable to the Hugheses, we conclude that the trial court erred in granting summary judgment to Q–2 on the Hugheses' adverse possession claim. Because legal title passed to Q–2's predecessor-in-interest by 1971, the Hugheses' predecessor-in-interest could convey only "bare rec-

ord title" to the disputed property to the Hugheses by the 1998 warranty deed, and legal title rested with Q–2 or its predecessor-in-interest at that time. Thus, the Hugheses' possession of the entire property described by their warranty deed was adverse to the legal title of the disputed property. *See* Utah Code Ann. § 78B–2–210. The Hugheses possessed the property in this manner from 1998 until the commencement of litigation in 2008. In opposition to Q–2's motion for summary judgment, the Hugheses introduced affidavit testimony and documents supporting their claim that for the entire period of their possession they had occupied the property in an open and notorious manner and paid the assessed property taxes.

¶ 17 On each element of their claim of adverse position, the Hugheses introduced sufficient evidence to survive summary judgment. The trial court therefore erred by granting summary judgment to Q–2 and dismissing the Hugheses' claim. Accordingly, we reverse the trial court's grant of summary judgment to Q–2.[4]

### CONCLUSION

¶ 18 Legal title to the disputed property passed to Q–2's predecessor-in-interest no later than 1971. The Hugheses' occupation of the disputed property from 1998 to 2008 was therefore adverse to the legal title, as required by statute. The Hugheses introduced sufficient evidence in support of their adverse possession claim to survive summary judgment. We reverse the trial court's grant of summary judgment to Q–2 and remand for further proceedings consistent with this opinion.

ORME, Judge (concurring specially):

¶ 19 I concur in the court's opinion, but with some trepidation. As I observed at oral argument, the idea that legal title to real property would be deemed to have shifted pursuant to doctrines like boundary by acquiescence or adverse possession[5] not at a point in time when a judicial decree so determines, but at some earlier point in time when the elements of such doctrines are factually satisfied, is concerning. This will mean that some real estate titles will be other than as shown by recorded documents, other than as memorialized in judicial decrees, and other than as an inspection of the property would suggest. The resulting uncertainty seems to guarantee a level of risk that is anathema to prospective real estate buyers as well as title insurers.

¶ 20 That said, I cannot argue that the import of the decisions cited in the lead opinion is other than as concluded there. So I do hope the parties will ask the Utah Supreme Court to review this decision. And I hope that the Court will grant the certiorari petition. The result we reach, troubling though it is, seems all but compelled by the Supreme Court opinions on which we rely. I cannot help but believe that those precedents should be reconsidered by the one court in a position to do something about them.

---

**4.** Q–2 also contends that the Hugheses' adverse possession claim must fail because the Hugheses believed and asserted that they were the legal owner of the property at all times prior to the trial court's ruling. We reject Q–2's argument because we can find no legal support for the proposition that a possessor who mistakenly believes that he or she is the legal owner of disputed property cannot possess that property adversely to the interests of the true owner. Moreover, such a rule would prove unworkable in cases such as this one where the possessor asserts adverse possession under color of a written document purporting to convey title to the disputed property. *See* Utah Code Ann. § 78B–2–210 (LexisNexis 2008). Were Q–2 correct, adverse possession claims founded upon such a written document could succeed only where the possessor knew or believed that the document purporting to convey title was fraudulent or otherwise in error.

**5.** This case involves the interplay between adverse possession and boundary by acquiescence, but the basic problem—viewing titles as having shifted not when a judicial decree says they have but when the requirements for those doctrines were satisfied at some earlier moment in time—is presented in any case involving either doctrine and, indeed, other doctrines, such as easement by necessity, easement by implication, and prescriptive easement.